## HEIDT *v.* SOUTHERN TELEPHONE AND TELEGRAPH COMPANY *et al.*

1. Where a telephone wire is broken by a storm which could not have been anticipated or reasonably foreseen, and falls upon an electric-light wire which is charged with a heavy and dangerous current of electricity and which has become grounded by the falling of a tree from the effects of the same storm, the liability of the owners of the respective wires depends upon the negligence in the construction and maintenance of the wires, where the injury occurs immediately after the falling of the wires and neither company has a reasonable time to discover and remove the danger.

2. An ordinance granting a franchise to a telephone company to construct and maintain its lines upon the streets and alleys of a city, which provides that wherever it is necessary for the telephone wires to cross any electric-light wire, a space of not less than three feet shall be preserved between the former and the latter, and if it shall be necessary to raise or lower the wires in order to preserve the distance, the expense thereof shall be borne by the company doing the latest construction, and proper guards are to be placed and maintained, (assuming its reasonableness) imposes the duty of erecting and maintaining guards upon the company doing the latest construction.

3. Where the undisputed evidence shows that at the point of crossing where the alleged contact of wires occurred, the electric-light company first con-

structed its wires, the ordinance was not applicable to the electric-light company, and its reasonableness or unreasonableness was not an issuable fact as to it, and the plaintiff has no cause of complaint of the submission of such issue to the jury.

4. If the abrasion of the insulation of the electric-wires, alleged in the petition, was not a proximate or efficient cause of the injury, such want of insulation would not be a basis of the plaintiff's recovery.

5. Where joint and several tort-feasors are sued in the same action and a recovery is had against one, errors peculiarly affecting the liability of the one against whom the verdict was found and which do not affect the liability of the other, are not ground for the granting of a new trial to the plaintiff as to the one in whose favor the verdict is rendered.

6. As to the defendant company which the jury by its verdict absolved from liability for the tort complained of, the evidence did not demand a finding in favor of the plaintiff.

Argued January 30, — Decided March 25, 1905.

Action for damages. Before Judge Parker. Ware superior court. June 27, 1904.

*Leon A. Wilson, John W. Bennett,* and *Toomer & Reynolds,* for plaintiff. *Osborne & Lawrence, J. L. Sweat,* and *W. G. Brantley,* for defendants.

EVANS, J. About 7:45 o'clock on the night of May 15, 1902, Redding E. Heidt, while walking upon the sidewalk on the northeast side of Jane street, in the City of Waycross, came in contact with a telephone wire lying upon the sidewalk. This wire was charged with a powerful current of electricity; Heidt was knocked down, and, as a result of the shock and the burns he received, he subsequently died. His widow, Amelia Heidt, brought an action for damages against the Southern Telephone & Telegraph Company and the Satilla Manufacturing Company, alleging that the death of her husband was brought about by their negligence, the telephone wire having been charged with a deadly current of electricity by reason of the fact that it had been allowed to come into contact with the wires of the Satilla Manufacturing Company, which owned and operated an electric-lighting system in the city. The plaintiff sought to recover damages in the sum of $30,000, averring that her husband had been earning $103.50 per month as foreman of the shops of a railway company, and might reasonably have expected promotion to a position paying $150.00 per month or more. The relative location of the wires and poles of the defendant companies along Jane street and in the immediate vicinity was fully set forth in her petition. The negligence with which the Satilla Manufacturing Company was

charged was, (1) that it had failed to erect and maintain safe and proper guard-wires, or other appropriate protecting devices, between its lighting wires and the wires of the telephone company, in order to avoid contact between them; (2) that the lighting wires were not, at the point of contact, properly insulated; (3) that these wires had, without necessity, been carried across Jane street to the northwest side thereof, by improperly locating a "transformer" on the northwest side of that street, thus bringing them under the telephone wires; (4) that the lighting wires were strung in "dangerous proximity to and within an unlawful distance of the wires" of the telephone company, and (5) that, at the point of contact, the Satilla Manufacturing Company had run its wires through and against a small sycamore tree, thus causing them to be rubbed and chafed by the branches of the tree and the insulation to be worn off. The telephone company was alleged to have been guilty of negligence in that (1) it failed to erect and maintain suitable guard-wires or other devices to keep its wires from coming into contact with the lighting wires; (2) its wires on Jane street were loosely and carelessly drawn through the tops of trees and against their branches, and were thus exposed to constant strain by the swaying of the wires and the limbs of the trees; (3) the telephone posts were placed 170 feet apart, whereas ordinary prudence required that they should be not exceeding 120 feet apart, the wires strung along them being too small and weak to stand the strain imposed upon them when connected with poles 170 feet apart; and (4) at the point where the contact occurred, the telephone wires were placed "across, above, and within a dangerous and unlawful distance of the electric-lighting wires of the Satilla Manufacturing Company; that is to say, at a distance ranging from six inches to two and a half feet above said wires." The plaintiff further charged that the defendant companies were concurrently negligent in thus erecting and maintaining their wires at the point where the contact occurred, and either had actual notice of the condition of affairs at that point or could have known thereof by the exercise of ordinary prudence, and that their negligence in this respect was the proximate cause of the death of her husband, and they were jointly and severally liable to her, the death of her husband being attributable to no fault on his part.

By way of an amendment to her petition, the plaintiff alleged that she was unable to state in what manner the telephone wire became disconnected and fell across the sidewalk, but that the proximate cause of the injury sustained by her husband was the defendant's violation of a valid municipal ordinance of the City of Waycross, adopted on December 29, 1896, which provided that: " Whenever it is necessary for the telephone wires and any electric wires in said city to cross each other, a space of not less than three feet shall be preserved between the former and latter ; and if it shall be necessary to raise or lower the wires in order to preserve the distance, the expense thereof shall be borne by the company or party doing the latest construction ; and appropriate guards are to be placed and maintained in manner just hereinbefore stated."    Both companies were charged with being concurrently and severally negligent in maintaining their wires at a distance apart which was less than that prescribed by this ordinance, and in permitting their wires to come into contact, so that the wire which fell across the sidewalk became charged with a deadly current of electricity.    The telephone company filed an answer, in which it denied that it was guilty of the acts of negligence charged against it, and averred that the death of the plaintiff's husband was the result of an act of God, there having been " a mighty storm which broke over the City of Waycross on the evening of May 15th, 1902, with irresistible force, and which in its progress broke the wires of this defendant's telephone system ; and before defendant knew of the break or had 'a reasonable opportunity to learn of the same, the injury to the deceased occurred."    In answer to the allegations set out in the amendment to the petition, the telephone company averred that the municipal ordinance referred to "was intended only to require the wires of telephone and electric companies to be suspended and maintained in such manner that electricity could not escape by induction from one wire into another, and that if the said ordinance bears the construction that guard-wires or any other kind of guard or device [must be erected] to prevent contact between one wire and another where they cross, in the event of a break or parting of wires, [it] is void, because it is unreasonable and provides an impossible, unnecessary, and dangerous requirement."    The Satilla Manufacturing Company filed a separate

answer, therein denying the negligence charged against it and insisting that the "death of R. E. Heidt was the result of an unusually severe storm." It further answered that, prior to his injury, it had no knowledge or notice of the municipal ordinance relied on by the plaintiff, and it denied the validity of the same. The case went to trial, and resulted in a verdict whereby the Satilla Manufacturing Company was exonerated from all charges of negligence against it, and the telephone company was held liable to respond in damages to the plaintiff to the amount of five thousand dollars. She made a motion for a new trial, and, upon the overruling thereof, brought the case to this court for review.

1. Persons or companies operating telephone and electric-light systems for the transmission of electricity upon and over public highways owe to the public the duty of properly constructing and maintaining their respective wires and poles ; they are bound to provide such safeguards against danger as are best, known and most extensively used, and all necessary protection must be afforded to avoid casualties which may be reasonably expected. *Higgins* v. *Cherokee Railroad*, 73 *Ga.* 164; *Davis* v. *Augusta Factory*, 92 *Ga.* 712. They are not insurers against accidents, but are bound to use reasonable care proportioned to the danger of injury. In determining whether the proper care and diligence in construction or maintenance has been observed, not only the physical structure of wires and poles must be considered, but also the use to which it is to be put, its remoteness or proximity to travelers on the highway, the nature of the electrical current which is to be transmitted over the line, the relative position of other lines, and all other circumstances affecting the case. The electric-light company and the telephone company both contend that the evidence demonstrates that the homicide for which the plaintiff sued was attributable to accident, and not to any remissness of duty on their part. Inasmuch as the plaintiff obtained a verdict against the telephone company, and a new trial is asked because the jury exonerated the electric-light company from all blame, it is not deemed necessary to refer to the complaints of negligence of the telephone company, except as its negligence may have been concurrent with that charged against the electric-light company. One of the plaintiff's contentions was that the electric-light company had failed to erect and maintain proper guards or

other appropriate protecting devices between its lighting wires and the wires of the telephone company. There were neither guard-wires nor any protecting device between the wires of the two companies. Expert evidence as to the efficacy of such means of protection was submitted, and seemed to preponderate with the conclusion that guards did not lessen the danger of contact and were not usually employed in electrical construction under similar conditions. Whether the failure to erect and maintain guards or other devices between the electric-light wires and the telephone wires constituted negligence was a question of fact for the jury. "In the present condition of the science and of the practical knowledge on this subject, it can not be said, as matter of law, what method of guarding the wires shall be required, nor whether any guards shall be required; for it is not known to the law that any method now known will prove effective. But it is a question for the jury, under all the facts in the case, to determine whether the method actually used was negligent." Block v. Milwaukee St. R. Co. (Wis.), 27 L. R. A. 368. The court in an appropriate charge to the jury submitted this issue, and left it to the jury to determine from the evidence whether proper construction demanded the employment of guard-wires or other device between the wires of the two companies. The other acts alleged as negligent construction, such as the location of the transformer, the insulation of the wires, the proximity of the wires of the telephone company, the running of the wires through the branches of a shade-tree, were also submitted to the jury under appropriate instructions. There was evidence tending to show that the electric-light company was not negligent in any of these particulars. The homicide occurred within thirty minutes after the light wire was grounded by a tree falling across it. There is no complaint in the petition that either company knew of the disarrangement of the wires, or that this condition had existed such a period of time that the companies, in the exercise of reasonable diligence, could have had knowledge of the danger resultant from the fallen wires. The evidence warranted a finding that the electric-light company had observed due care in the construction and maintenance of its line, and that the proximate cause of the homicide was the grounding of its current by the falling of a tree across its wires, for which it was in no way responsible. This tree was blown down by a

violent storm. The electric-light company, in the construction of its line, was bound to adopt all reasonable precautions for the protection of the public, to prevent casualties which might be reasonably anticipated. This obligation would require it to anticipate the influence of the ordinary storms customary to the locality. But if the falling of the electrically charged wire was caused by a storm of unusual severity, which could not have been reasonably foreseen and its consequences guarded against, the company would not be liable if it was not otherwise negligent. Mitchell *v.* Charleston Light & Power Co., 31 L. R. A. 577. The various instructions of the court which embodied the principles announced in the first headnote were not erroneous.

2, 3. The plaintiff alleged that the ordinance requiring the erection and maintenance of guards and the preserving of a distance of not less than three feet between the wires of the two companies at crossing points imposed a joint duty on both the telephone company and the electric-light company to maintain the guards and to preserve that distance between their wires, and that a failure to comply with the ordinance constituted negligence per se. The fourth section of the ordinance, which is relied on as establishing this duty, is embodied in the statement of facts. The caption of the ordinance was as follows: "An ordinance granting to the Southern Telephone & Telegraph Company, their associates, successors, and assigns, the rights and privileges of erecting and maintaining telephone poles and wires within the corporate limits of the City of Waycross and operate a telephone exchange." This ordinance gave municipal assent to the telephone company's erection of its telephone system over, along, and upon the streets and alleys of the city. It also imposed burdens upon the telephone company, and in this respect it amounted to more than a contract granting a franchise, and was an exercise of the right of municipal legislation. It therefore has the force of law within the corporate limits. Hayes *v.* Mich. Cen. R. Co., 111 U. S. 228. The manifest purpose of the ordinance was to require, at points where the telephone wires crossed an electric-light wire, a distance of three feet to be preserved between the wires of the two companies, and that proper guards should be maintained to prevent contact between the wires. The rights of the electric-light company, which the evidence shows had previously con-

structed its system, were recognized by the provision in the ordinance that the cost of raising or lowering its wires, if necessary, and the erection and maintenance of guards should be borne by the telephone company, as the "party doing the latest construction;" and the ordinance further contemplated that should the electric-light company subsequently extend its line or change its course so that it crossed over or under the wires erected by the telephone company, the expense of raising or lowering its wires and erecting and maintaining guards should fall upon the electric-light company, as the company doing the latest construction and thus rendering this expense necessary. That is to say, the intent was to impose upon the company doing the latest construction the duty of meeting the requirements and observing the precautions stated in the ordinance. If that company failed to comply with the ordinance, then the city could compel its observance by having the work done at the company's expense; but the other company, being under no duty to erect or maintain guards, could not likewise compel a compliance with the terms of the ordinance but would have to rely upon the city to enforce it. We construe the ordinance to mean that the duty of erecting and maintaining guards between the wires was imposed on the company doing the latest construction. In one instance this duty might fall on one company, and in another instance upon the other company, according to the priority of construction at the crossing point. There being no dispute in the evidence that the electric-light company's wires were first erected at the point of alleged contact, the ordinance was inapplicable to it, so far as this case was concerned. Relatively to the electric-light company, non-compliance with the ordinance at the point where the telephone wires were stretched above its wires at the transformer pole was not negligence per se, nor could that company be held responsible for the injury unless reasonable care demanded that the precautions prescribed in the ordinance should have been observed and the electric-light company was negligent in maintaining and using its wires under the existing conditions at that point. Therefore any error which the court may have committed in submitting to the jury the reasonableness of the ordinance is not cause of complaint, so far as the liability of the electric-light company was concerned. The jury could not have found that the ordinance

was unreasonable without first coming to the conclusion that the electric-light company had sustained, by a preponderance of the evidence, its contention that guard-wires and other protecting devices had been proved, by practical experience, not to be effective, because themselves liable to be blown down or disarranged by storms, thus aggravating, rather than lessening, the danger of its wires coming into contact with those of the telephone company. In fact the evidence was quite convincing that neither guard-wires nor other precautionary devices were longer employed by experts in electrical construction, as more casualties had been occasioned because of their use than would have occurred otherwise, and that they really were a menace, instead of a protection, to persons passing along the streets of a city where wires carrying a high current of electricity passed under or above the wires of a telegraph or telephone company.

4. In her petition the plaintiff alleged that at the point of contact the electric-light company had run its wires through and against a small sycamore tree, thus causing them to be rubbed and chafed by the branches of the tree and the insulation to be worn off.    The electric-light company offered evidence tending to show that the contact occured at a point other than where the insulation had been abraded by the branches of the tree.    The evidence as to the precise point of contact was conflicting, and the court charged the jury that if they found from the evidence that at the point at which the telephone wire fell across the electric-light wire the latter wire was insulated in the usual and customary manner, the fact that the wire of the electric-light company may not have been insulated at other points would not constitute negligence upon the part of either of the defendants which would render them liable.    This charge can not be construed into an expression of opinion as to what is or is not negligence.    The instruction was nothing more than a statement of the general rule that a defendant is only required to respond to the specific negligence alleged against it, and is not liable for acts of negligence which did not bring about the injury of which complaint is made.    The court merely told the jury that if at the place of contact between the wires there was proper insulation, then the want of insulation at a different place would not be the proximate cause of the injury. The plaintiff in any case must stand or fall by the allegations of

negligence alleged in his petition, and will not be permitted to recover because of negligence about which no complaint is made or which in no way contributed to the injury inflicted.

5. Where two persons are alleged to be joint and several tortfeasors and are sued in the same action, and a recovery is had against only one of them, errors committed by the court peculiarly affecting the liability of the one against whom the verdict was found, but not affecting the liability of the other, do not afford cause for granting the plaintiff a new trial as to the one in whose favor the verdict operated.  Certain charges of the court are excepted to on the ground that the city ordinance above referred to was ignored, and the jury were in effect instructed that, despite this ordinance, if the defendant companies exercised all usual and proper diligence in the erection and maintenance of their respective systems, and the casualty was brought about by a storm of unusual severity, neither of the defendants would be liable to the plaintiff.  Complaint is also made that the court told the jury that as the ordinance provided that the telephone system should be constructed and maintained under the supervision and direction of the city authorities, the presumption would be it was so constructed and maintained, unless the contrary was made to appear.  Evidently, while these instructions affected the liability of the telephone company, they did not operate to the prejudice of the plaintiff in so far as the electric-light company was concerned ; for, as we have already pointed out, it was not bound to observe the municipal ordinance in maintaining its wires and poles on Jane street, having constructed its line along that street before the telephone company erected its system, and the latter company being therefore the one upon which the duty imposed by the ordinance rested.

6. It is earnestly insisted by the plaintiff in error that in no view of the evidence was the jury warranted in exonerating the electric-light company from the charges of negligence made against it.  We think otherwise.  The wires of that company were stretched on the south side of Jane street, while the wires of the telephone company were strung along the north side. There were shade-trees on this street, and the telephone wires passed through the branches of a sycamore and also those of an oak tree.  The electric-light company had stretched two wires

across the street to a pole upon which a transformer was located. The wires to the transformer passed through the limbs of the sycamore tree, and the insulation was abraded by the swaying of its branches.    The distance between the telephone and the lighting wires at the point of crossing was variously estimated by witnesses to be from eight inches to three feet.    There were no guards between the two systems of wires at this point of crossing. The electric-light wires were charged with a heavy current of electricity, and the office of the transformer was to reduce the electrical voltage, so that a lesser current might be transmitted from the transformer by secondary wires to the house of Mr. Mathis, one of the patrons of the electric-light company, located near the transformer and on the same side of the street.    There was expert testimony that the construction and maintenance of both of the electric systems were proper; that guards were unnecessary, ineffective, and tended to increase the hazard they were designed to obviate, and if erected would probably not have afforded any additional protection.    It further appeared that the fallen telephone wire would not have been charged with a dangerous current of electricity by coming into contact with either or both of the electric-light wires, had not one of the lighting wires become grounded by a cause for which the electric-light company was not responsible.    In the early part of the night of May 15, 1902, Waycross was visited by a severe wind and rain storm.    There was some dispute as to its degree of severity; some witnesses asserted that a storm of its severity had theretofore been unknown; others testified that while the storm was unquestionably severe, it was not unprecedented in that locality. The effect of the storm was to break one of the telephone wires on Jane street, west of the transformer pole above referred to. The wire was blown over and upon the garden fence of Mr. Mathis and fell across the sidewalk in front of his house.    A pedestrian passed this point before the storm had ceased, became entangled in the wire, but escaped without injury.    Within twenty minutes thereafter, the plaintiff's husband encountered the same fallen wire and was killed by the high electrical current with which it was charged.    In the meantime, a tree on Plant avenue, some distance away, had been blown by the storm across the electric-light company's wires, causing them to become

grounded at that point.　In the opinion of the expert witnesses, the grounding of these wires caused the telephone wire to become charged with an electric current of heavy voltage, and was the efficient and proximate cause of the homicide.　As to which was the proper side of Jane street on which to locate the transformer of the electric-light company, the evidence was conflicting.　It had located its transformer pole on the north side of that street before the telephone · company erected its system, the object in carrying the wires across the street being to locate the transformer as close to Mr. Mathis' house as possible, in ‘order that he might receive better service than could be afforded if the pole was erected on the opposite side of the street.　There was proof that secondary wires run from a transformer placed on the south side would not have carried a dangerously high current, and would have afforded ample service to the electric-light company's patron on the north side of the street.　But it would seem from the evidence upon this branch of the case that nothing short of extraordinary diligence on the part of that company would have suggested that, after the telephone company erected its line, the transformer should be removed to the south side of the street, in order to guard against all possible danger of the wires of the two systems coming into contact, especially as the testimony disclosed that, even were the telephone wires to fall across the lighting wires, the telephone wires would not become charged with the dangerous current of electricity, unless, by reason of some unforeseen emergency such as afterwards occurred on the night of the homicide, the lighting wires were grounded.　Whether or not, in the exercise of ordinary diligence, this precautionary measure should have been taken by the electric-light company was peculiarly a question for the jury to determine.　Upon what theory the jury reached the conclusion that the telephone company was chargeable with negligence is, of course, purely a matter of conjecture.　As to the electric-light company, suffice it to say that we are not prepared to hold that the evidence demanded a finding against it.

*Judgment affirmed.　All the Justices concur.*