## STEWART *v.* GREENE.

1. When in an action for damages against the hirer of a horse, buggy, and harness, brought by the owner of the same, the petition alleges the hiring, and that the defendant, through his carelessness and negligence,

"suffered said animal to run away and kill herself, and in so doing said buggy was destroyed and the harness injured, to the damage of petitioner in" a named sum, it is not subject to demurrer upon the ground that it states no cause of action.

2. The allegation in the petition in the present case, that the horse, while attached to the buggy, was hitched by the defendant to a picket fence, and was not securely fastened, was subject to a special demurrer which called for a more specific allegation as to negligence in the manner in which the animal was fastened to the fence. This is true notwithstanding the allegation that the fence, "being composed of upright sharp-pointed pickets, was [a] dangerous, unsafe, and improper place" at which to hitch the horse.

3. The allegation that this fence "was [a] dangerous, unsafe, and improper place" at which to hitch the animal, was too general to withstand a special demurrer calling for the particulars in which the place was dangerous, unsafe, and improper for such purpose.

4. The evidence was not sufficient to support the verdict, and for this reason a new trial should have been granted.

Argued January 22,—Decided February 19, 1906.

Action for damages. Before Judge Hamilton. City court of Floyd county. May 10, 1905.

*George A. H. Harris & Son,* for plaintiff in error.

*F. W. Copeland,* contra.

Fish, C. J. The plaintiff, who kept a livery stable in the city of Rome, brought suit against the defendant for damages in the sum of two hundred dollars. He alleged, that the defendant had hired a mare, buggy, and harness from him, for the purpose of driving out to L. M. Johnson's, a distance of three miles, and returning, and that by reason of the defendant's negligence the mare, which, while still attached to the buggy, had been hitched by the defendant to a picket fence at Johnson's place, "finally became detached or unhitched," and started back to her stable and, in her fright, ran against a telegraph post on the streets of Rome and killed herself, wrecked and ruined the buggy and injured the harness. The value of the mare and the amount of the damages to the vehicle and to the harness were stated. The defendant demurred to the petition, upon various grounds. The demurrer was overruled, and upon the trial the jury returned a verdict in favor of the plaintiff for $85. The defendant moved for a new trial, which motion was overruled, and he excepted, assigning error upon the overruling of this motion and upon exceptions pendente lite which he had filed to the ruling upon the demurrer.

1. One ground of the demurrer was that the petition set forth no cause of action. The petition alleged that the defendant hired the mare, buggy, and harness from the defendant, "and through his carelessness, negligence, and indifference toward said mare, buggy, and harness, and wholly without blame on petitioner's part, suffered said animal to run away, and kill herself, and in so doing the said buggy was destroyed and the harness injured, to the damage of petitioner in the sum of two hundred dollars." It also set forth wherein the alleged negligence consisted. It is apparent, therefore, that there was a cause of action stated in the petition.

2, 3. The petition alleged: "Said James Stewart hired said property at night, the weather was very cold, and it was a dark night, notwithstanding which said Stewart, without detaching said mare from said buggy, hitched said mare . . to a picket fence at the end of his journey, where he remained for several hours; . . said mare was not securely fastened; said picket fence being composed of upright, sharp-pointed pickets, was [a] dangerous, unsafe and improper place to hitch said mare, in which place without attention she was left standing for some time, and finally became detached or unhitched, on which account she started to her stable, . . and in her fright ran against a telegraph post," etc. It also alleged that the defendant "was otherwise careless and negligent, in that, the weather being very cold, and said mare having been driven but a short distance, and having been taken from her mate and other horses in the stable from which she had just been driven . . it was gross negligence and carelessness to leave her hitched to said buggy, at said picket fence, for any length of time, but . . ordinary care and diligence required and demanded that said animal should have, under the facts and circumstances, been unhitched from said buggy, and securely fastened at some other place than said picket fence, which could and should have been done." One ground of the demurrer was, that it was not "shown or alleged in the petition how nor in what way the mare could have been more securely fastened than she was, nor how or why the hitching of the mare to the picket fence in the manner the same was done was negligence or the want of the exercise of ordinary care." We think this ground was good as a special demurrer. The plaintiff undertook to set out the acts of negligence. He alleged that the animal was not securely fastened, without indicating

how she was fastened, otherwise than by merely stating that she was hitched to a picket fence. The defendant was entitled to be informed wherein the plaintiff claimed the mare was not securely fastened. We apprehend that the animal might have been fastened securely to a picket fence. The allegation that the picket fence was a dangerous, unsafe, and improper place to hitch the animal is not an allegation as to the insecure manner in which she was fastened, but is, what it purports to be, an allegation of negligence, not in failing to securely fasten, but in hitching the animal at a dangerous, unsafe, and improper place. The place might have been a dangerous, unsafe, and improper one at which to hitch the mare, and the defendant negligent in selecting such a place for this purpose, and yet the method adopted by him in fastening her at that place might have been entirely free from negligence. So, too, we think the defendant, upon special demurrer, was entitled to be informed wherein the plaintiff claimed that the hitching of the mare to the picket fence, in the manner in which this was done, was an act of negligence. The allegation that this fence "was a dangerous, unsafe, and improper place to hitch said mare," was too general to withstand a demurrer calling for the particulars as to wherein it was dangerous, etc. This is particularly true when there was no allegation that the mare, buggy, or harness had sustained any injury while hitched at this place; the allegation as to what occurred there, after she was hitched, being simply that "she finally became detached, or unhitched, on which account she started to her stable," which was perfectly consistent with the idea that the place of the hitching was a safe one. We do not think there was any error in overruling any of the other grounds of the demurrer, and do not think them of sufficient importance to require discussion.

3. The main ground, however, upon which we think a new trial should have been granted is that the verdict was without evidence to support it. While the burden, after proof of the loss and damage—the hiring being admitted,—was upon the bailee to show diligence, we think he successfully carried it. It appeared, from the testimony of both the plaintiff and the defendant, that the mare had been perfectly gentle until this accident occurred, and that for several months the defendant had been in the habit of hiring her from the plaintiff and driving her. There was not a particle of evidence which indicated that she was nervous and likely to be-

come frightened by being hitched to a picket fence while still harnessed to a buggy. On the contrary, the defendant's own testimony and that of other witnesses who testified in his behalf was, that he had frequently driven the animal out to Johnson's and hitched her, while attached to the vehicle, to the same fence, at the same place and in the same manner as on this occasion, and that until this occasion the animal never got loose and there was no accident. It is true that the plaintiff testified that it was not safe to hitch the mare to that picket fence, as the defendant told him he did. But in so doing, he merely expressed an opinion, without stating wherein it was unsafe to do this. On the other hand, the testimony of the defendant and other witnesses showed, that, from the past experience of the one and the observations of the others, it was not unsafe or dangerous to tie this particular mare to this particular fence, just as she was tied to it on this occasion. Besides, witnesses other than the defendant testified that they had been in the habit of hitching horses to this same fence without incurring any accidents. Save the mere opinion of the plaintiff, there was nothing in the evidence which indicated that the place where the animal was hitched was unsafe or dangerous, or that it was unsafe to hitch a horse while attached to a buggy. Whether it was, as a general proposition, safe or unsafe to hitch a horse, harnessed to a buggy, to this picket fence, there is no escape from the conclusion that the defendant, from abundant past experience with this animal, was justified, as a prudent man, in believing that it would be safe to hitch her there as he did on this occasion. The evidence failed to show that the mare became frightened in consequence of being hitched to this fence, while attached to the buggy. She got loose, not by breaking the line with which she was tied, nor by breaking her bridle, but evidently by simply slipping her bridle, as, after her escape, the line with which she was tied to the railing of the fence was found perfectly intact and still tied to the railing, and the bridle was found lying on the ground, uninjured, and with the throat-latch still buckled. The fact that the mare slipped her bridle, and thus got loose and started to her stable, without, so far as the evidence shows, being excited or frightened by the place where, or the manner in which, she was tied, did not, in our opinion, show negligence on the part of the defendant, as the bridle was put on her by the servant of the plaintiff, and was in the same condi-

tion when the defendant hitched the mare to the fence as it was when she was delivered to him at the plaintiff's stable. There was nothing in the evidence inconsistent with the theory that the fright of the animal, which caused her to run against the telegraph pole and kill herself, occurred after she slipped her bridle and started back to her stable. We have not overlooked the fact that the plaintiff testified that in the forenoon of the day when his loss occurred, which was December 25, 1902, he told the defendant that if he took the mare out, "he did it at his own risk, that [plaintiff] did not know whether she would run away, kill herself, or [defendant], or hurt somebody else." But this statement, from the connection in which it was made, clearly referred only to the danger of the animal's becoming frightened at the explosion of fireworks about the town, and running away in consequence thereof. We are clearly of opinion that the evidence showed that the defendant had exercised that degree of care which was incumbent upon him under the circumstances, and therefore was not liable to the plaintiff for the loss sustained. *Judgment reversed. All the Justices concur.*