## 1168. JOHNSON *v.* PERKINS.

1. In all cases of bailment, after proof of loss, the burden of proof is on the bailee to show proper diligence.
2. An unreasonable, improbable, or impossible explanation of an injury which has been sustained by property of the bailor while in the hands of the bailee may be equivalent to an admission of liability. In any event, such an explanation, as well as no explanation, may be held by a jury to be a failure on the part of the bailee to show proper diligence towards the property entrusted to his care. Where a horse is delivered in good condition to a blacksmith to shoe, and shortly afterwards the horse is found still in his possession, badly cut, the presumption of negligence on the part of the bailee arises, which will authorize liability for the injury to be fixed on him, unless that presumption be rebutted to the satisfaction of the jury.
3. The evidence, though meager, supports the verdict, and there is no room for interference by this court with the discretion of the trial judge, who approved it.

Appeal, from Morgan superior court—Judge Lewis.   April 22, 1908.

Argued June 14,—Decided July 31, 1908.

*F. C. Foster,* for plaintiff in error.   *Q. L. Williford,* contra.

RUSSELL, J.   Perkins, a liveryman, brought a suit in the county court against Johnson, a blacksmith, to recover damages for an alleged negligent injury to a horse which the defendant had engaged to shoe; it being alleged that the horse, while being shod,

received an injury from which he afterward died. The case was appealed to the superior court, and resulted in a verdict in favor of the plaintiff, for $150. Exception is taken to the judgment of the superior court, overruling a motion for new trial, based upon the general grounds.

The material allegations of the plaintiff's petition are, that on July 21, 1905, Perkins carried his horse to the defendant's shop to be shod; that, while it was being shod, Riley Cash, a regular employee of the defendant, who was accustomed to aiding the defendant in shoeing horses, "did negligently, carelessly, and without cause cut, with a knife or other sharp instrument, the side of said horse, making a very serious and terrible wound, and that said horse died from said wound, on August 3, 1905." The evidence for the plaintiff tended to show, that Perkins carried his horse to the defendant's shop to be shod, and that after a time he returned and found a deep gash or cut in the left side of the horse, about three inches long, just in front of and even with small bone which projects at the top of the hip. The horse was cut to the hollow. Riley Cash, the helper (it appearing that the proprietor, Berry Johnson, was absent), was asked about the cause of the wound, and stated to Perkins that he did not know the cause. The doctor was summoned, and stitched up the wound. Two or three days later, Riley Cash stated that the horse must have gotten cut when he fell back on him, while he was paring its foot. The physician who was called in gave the horse good medical treatment, and the wound began to close up, but the action of the horse showed that it was in pain. It threw its head to its left side, and could not carry its left hind foot forward with ease, gave way on the left side, and, when the stitches were cut after several days, quite a quantity of pus ran out, and the wound had to be washed for a number of days. On the twenty-ninth day after the horse received the cut, it was ridden (very slowly, according to the testimony for the plaintiff, and, according to evidence for the defendant, in a gallop) eight and one half miles into the country, and, on the way back, died. The value of the horse, care, attention, loss of service, and physician's bill were shown. This constituted the evidence in behalf of the plaintiff.

1. The evidence was uncontradicted that the person who took the horse in charge to shoe him was the servant of the bailee, or

blacksmith, who was employed by the bailee for that purpose. The
evidence, therefore, put the horse into the possession of the bailee
in good condition. When it was shown that he was injured while
in possession of the bailee, the burden of proof was shifted, and
it devolved upon the defendant to show that the damage that re-
sulted was not due to negligence on his part. The learned counsel
for the plaintiff in error attacks the judgment refusing a new
trial, upon the general grounds only, and insists that the plain-
tiff failed to make out a case, because the evidence does not clearly
show that Cash, the servant of the defendant, intentionally in-
jured the horse. Under the Civil Code, §2896, it did not de-
volve upon the plaintiff to show that the blacksmith, or his serv-
ant, cut the horse and thereby damaged the plaintiff. On the
contrary, when the injury was shown, it devolved upon the black-
smith, as bailee, to show that injury could not have been prevented
by proper diligence; that it was due to no neglect on his part.
And if the defendant failed to make this showing, to the satisfac-
tion of the jury, the plaintiff was entitled to recover upon mere
proof that the cutting was done while his horse was in the care
of the blacksmith, or of his servant employed by him for the
purpose of shoeing horses. "In all cases of bailment, after proof
of loss, the burden of proof is on the bailee, to show proper dili-
gence." *Johnson* v. *State,* 58 *Ga.* 396, 397; *Central Ry. Co.* v.
*James,* 117 *Ga.* 833 (45 S. E. 223) ; *Tuggle* v. *State,* 119 *Ga.* 969
(47 S. E. 577) ; *Heidt* v. *Southern Tel. & Tel. Co.,* 122 *Ga.* 476
(50 S. E. 361) ; *Morris Storage Co.* v. *Wilkes,* 1 *Ga. App.* 751 (58
S. E. 232).

2. It must be conceded, then, that if the plaintiff showed that
his horse was cut while in the possession of the blacksmith, and
that he died from the wound, without more, he would be entitled
to a recovery. The defendant attempted to explain the presence
of the wound in the horse's side. Riley Cash testified that he was
on the right-hand side of the horse, with his face towards the
horse's hip, and paring his right forefoot, when the horse gave way,
fell on him, and in an unaccountable way was cut. The jury had
uncontradicted testimony that the cut was right at the point of
the *left* hip-bone. It would seem, by all physical laws, that it
was impossible, under these circumstances, for the cutting to have
taken place in the manner described by the horseshoer, and the

jury had the right to say that this explanation was ill-founded and unsatisfactory. It may have been a significant fact to the jury also that the witness, when first questioned in regard to the matter, stated that he did not know how it occurred, when he must have known as well at that time as he did when he subsequently testified. An unreasonable, improbable, or impossible explanation of an injury, sustained by property of the bailor while in the hands of the bailee, may be equivalent to an admission of liability. In any event, such an explanation, as well as no explanation, may be held by a jury to be a failure on the part of the bailee to show proper diligence towards the property entrusted to his care. Where a horse is delivered in good condition to a blacksmith to shoe, and shortly afterward the horse is found to be in his possession, badly cut, the presumption of negligence on the part of the bailee arises, which will authorize liability for the injury to be fixed on him, unless the presumption be rebutted to the satisfaction of the jury.

3. We think the evidence supported the verdict. We have already dealt with the fact that the jury could with propriety come to the conclusion that the injury was due to the negligence of the bailee or his servant, if the explanation of the cutting was not satisfactory to them. But it is insisted that there is no proof that the death of the horse was the result of the injury, and also that the verdict of the jury was for less than the amount of damage shown by the proof. We think the jury were authorized to conclude, from the evidence, that the cut caused the death of the horse. He was cut to the hollow, and gave evidence of pain, according to some of the testimony, up to the time of his death. Mr. Utsey testified that while the horse had before been a free-driving horse, he became too sluggish for his use, after the wound. He testified, it is true, that in his opinion sluggishness might be produced by over-feeding and other causes, but there was no evidence that the causes which were suggested had supervened. There was a conflict in the evidence as to the speed at which the horse was ridden the day he died. If the jury had believed the witness who testified that the horse was being ridden in a gallop on a very hot day, the jury might have been in doubt as to the cause of death, or might have disbelieved that the death of the horse was caused from the wound. But the jury had just as much.

right to believe the testimony in rebuttal of this, and that the horse was ridden very slowly the day he died, requiring several hours to make a few miles, and, therefore, in view of other cir-- cumstances in the case, that death resulted from the wound, and not from the ride. The jury were not compelled to find the full amount proved by the plaintiff. They were the exclusive judges of negligence and its degrees. But if they erred in the amount of their ᴠfinding, the defendant can not complain that they found less against him than they should have found. *Ellis* v. *U. S. Fert. Co.*, 64 *Ga.* 571; *Mullins* v. *Murphey*, 69 *Ga.* 754; *Roberts* v. *Rigden*, 81 *Ga.* 740 (7 S. E. 742); *Taylor* v. *Gilmore*, 3 *Ga. App.* 93 (59 S. E. 325).                    *Judgment affirmed.*