27031. RICHTER BROTHERS *et al.,* for use, etc. *v.*
ATLANTIC COMPANY.

DECIDED DECEMBER 5, 1938.

*MacDougald, Troulman & Arkwright, Dudley Cook, Bennet & Peacock,* for plaintiffs.

*S. B. Lippitt,* for defendant.

MacINTYRE, J. Richter Brothers and others filed the present action to recover damages to a quantity of pecans (as the result of fire), which the plaintiffs had on storage with the defendant as a bailee and warehouseman. The complaint set out in detail the contract of bailment, the quantity of pecans stored, and the amount of damage resulting from the fire. It was alleged that the defendant was a warehouseman with reference to said goods and a depository for hire, and became bound for ordinary diligence in safely protecting, keeping, and redelivering said goods. In this connection it was alleged: that defendant failed to use ordinary care in keeping safely the things bailed; that while storing 500,000 pounds of pecans, worth about $100,000, defendant negligently piled the sacks of pecans eight or ten high, too close to incandescent electric lights, the pecans being full of oil and being inflammable, so that when the lights were left burning the pecans caught on fire; that while many thousand pounds of pecans of great value were on storage, defendant negligently allowed the sacks etc. to be shoved against the incandescent electric lights and their fixtures, thus loosening the incandescent lights and causing them to sag down low enough to come in contact with the bags and fire them; that while storing 500,000 pounds of pecans, worth about $100,000, defendant maintained incandescent electric lights close to the pecans which were oily and inflammable, and likely to come in contact with them, yet failed to provide said incandescent lamps with wire shields or guards to prevent each from coming in contact with the inflammable pecans; that while storing 500,000 pounds of pecans, worth $100,000, defendant maintained incandescent lamps close to the oily and inflammable pecans to make it likely that they would set fire to the same if left burning a sufficient length of time, and on the

night of the fire they were negligently left burning such length of time and did set fire to the pecans; that defendant negligently failed to have a watchman inspect said pecans in each store-room at least once each hour of the day and night, to discover and put out fires; that with so valuable an amount of pecans on hand of such inflammable nature, defendant should have had a sprinkler system to guard against fire, and failed to do so; that with 500,000 pounds of pecans of the value of $100,000 on hand, defendant had them stored in three separate compartments, separated by brick walls, with six-foot openings between, and no doors in said openings to hermetically seal them and prevent noxious gases going from one compartment to the other, so that when a small fire broke out in the southernmost compartment and smouldered for several hours the heat distilled the nuts, driving off noxious gases and vaporized oil, which went to where plaintiffs' pecans were stored in the northernmost compartment, said gases penetrating the hulls of the pecans and rendering them unfit for human consumption, and this would have been prevented by hermetically sealed doors; that with such valuable and inflammable pecans on hand defendant negligently failed to provide but one entrance and exit by elevator, so that fire fighters could not control the fire, and had to break through the ceiling, with the result that the fire in the southernmost compartment smouldered six additional hours after it was discovered, thereby greatly adding to the damage of plaintiffs' pecans in the northernmost compartment; that defendant realizing the fearful danger of fire on account of the close proximity of the incandescent lights to the highly inflammable pecans, instead of refusing to receive and store additional pecans in its overcrowded warehouse, and instead of providing lights with wire guards or shields to make it impossible for them to touch the pecans, and instead of removing the light globes entirely, did negligently adopt the silly expedient of partially unscrewing out of their sockets some of the light globes, which were thus endangering the contents of the warehouse, in order to prevent said lights burning so close to the piled-up pecans, and ordinary diligence required that defendant should know that such expedient was insufficient to guard against the danger, and that a slight jar, or increased current, or other thing, would likely start to burning again such lights thus partially unscrewed from their sockets; that defendant's warehouse was origi-

nally equipped with three pilot lights at the elevator (one on the circuit of lights for each room), so that one looking up the elevator shaft could tell by the pilot light whether any of the electric lights in any room were burning, but for some months before the time of the fire said defendant had negligently failed to replace the burned-out or destroyed pilot lights at the elevator, so that none of them could give warning to persons looking up the elevator shaft that the lights were burning in the room where plaintiff's pecans were stored, and if said pilot lights had been operating on the night of the fire, the fact that the lights were burning would have been discovered in time to prevent injury to plaintiff's pecans; that defendant negligently piled inflammable sacks of pecans eight or ten sacks high, near the ceiling, close to and above the incandescent electric lights which hung down fifteen or eighteen inches from the ceiling, and especially about two or three days before the fire, at the point on the fourth floor where the fire later started, did negligently pile such sacks in a manner other than directly and solidly above each other with the weight distributed evenly, with the result that said sacks were piled in a state of unstable equilibrium, so that they were likely to, and did, shift their position, with the result that the sacks closest to the incandescent lamp which hung where the fire originated, did, within twenty-four hours before the fire, settle and shift themselves, so as to bring them in contact with the incandescent light, so that the light did set said pecans on fire, and by ordinary care the defendant could have foreseen that such shifting would occur, and that said fire would result therefrom.

■ The action, properly construed, sounds in tort founded on a breach of duty springing from a violation of the contract of bailment. *Miller* v. *Ben H. Fletcher Co.*, 142 *Ga.* 668 (2) (83 S. E. 521) ; *Bales* v. *Madison County*, 32 *Ga. App.* 370 (3) (123 S. E. 158). Compare *Fain* v. *Wilkerson*, 22 *Ga. App.* 193 (2, 3) (95 S. E. 752). In such case it is necessary to set forth specific acts of negligence of the bailee in connection with the keeping and handling of the property. *Stewart* v. *Greene*, 124 *Ga.* 975 (53 S. E. 450) ; *Parker Motor Co.* v. *Spiegal*, 33 *Ga. App.* 795 (3) (127 S. E. 797).

Many of the assignments of error are with reference to the trial judge's charge in regard to the burden of proof. We shall consider

these as a whole. It has been stated that the term "burden of proof" has a dual meaning. "First, the necessity of establishing the existence of a certain fact or set of facts by evidence which preponderates to a legally required extent [in this State by a 'preponderance of the evidence,' see Code §§ 38-105, 38-106]; or second, the necessity which rests on a party at any particular time during a trial to create a prima facie case in his own favor or to overthrow one when created against him." 22 C. J. 68; Thayer on Evidence. In this connection it was said in the case of *Hawkins* v. *Davie,* 136 *Ga.* 550 (71 S. E. 873) : "The use of the expression 'burden of proof' in a dual sense, sometimes as indicating the burden of establishing the case as a whole, and sometimes as indicating the burden of the evidence during the progress of the trial, or that certain evidence will make out a prima facie case or will serve prima facie to establish a given fact, if not rebutted, has created no little confusion. Generally the burden of proof in the sense first mentioned rests where the pleadings originally placed it. Thus, if the plaintiff alleges a right to recover, and the defendant denies his allegations, without more, the plaintiff, upon the case as a whole, carries the burden of proof, that is the burden of showing, by a preponderance of the evidence, that he is entitled to recover. If the defendant does not file a denial of the plaintiff's allegations, but admits in his pleadings a prima facie case in favor of the plaintiff, and sets up an affirmative plea, such as a plea of confession and avoidance, he assumes the burden. . . During the progress of the case, the burden of introducing evidence as to particular facts or issues may be shifted one or more times. One party may introduce evidence touching a particular fact, which would be sufficient prima facie to establish such fact, if not rebutted. In this sense, the burden may shift from one party to the other in the progress of the trial."

In reference to the first-mentioned meaning of the term "burden of proof," the Code, § 38-103, provides: "The burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation be so essential, the proof of such negative lies on the party so affirming it." The burden of proof is determined by the pleadings, and where a party has the burden of proof to establish a fact by the preponderance of the

evidence, it remains on him throughout the trial. *Grimsley* v. *Morgan,* 178 *Ga.* 40 (2) (172 S. E. 49) ; *North British and Mercantile Ins. Co.* v. *Parnell,* 53 *Ga. App.* 178 (185 S. E. 122) ; *Pope* v. *Peeples,* 24 *Ga. App.* 467 (101 S. E. 303). Thus, the fact that the plaintiff introduces sufficient evidence to make out a prima facie case, and that in so doing he is relieved by statute of the burden of introducing evidence on an issue, the affirmative of which is essential to a recovery, in no way relieves him of ultimately establishing the essential facts of his case by a preponderance of the evidence. *Wittern* v. *American Surety Co.,* 46 *Ga. App.* 467 (168 S. E. 74) ; *Strickland* v. *Davis,* 184 *Ga.* 76 (3) (190 S. E. 586) ; *Mobley* v. *Lyon,* 134 *Ga.* 125 (67 S. E. 668, 137 Am. St. R. 213, 19 Ann. Cas. 1004) ; *Battle* v. *Williford,* 160 *Ga.* 287 (2) (127 S. E. 762) ; *Farmers State Bank* v. *Kelley,* 159 *Ga.* 280 (125 S. E. 467) ; *Southern Ry. Co.* v. *Fleming,* 141 *Ga.* 69 (2) (80 S. E. 325) ; *Ga. Ry. & Power Co.* v. *Shaw,* 40 *Ga. App.* 341 (149 S. E. 657).

Therefore, while in a case of the present character it is not error for the trial judge to charge that the burden of proof rests upon the plaintiff to sustain his case by a preponderance of evidence (*Strickland* v. *Davis,* supra), yet since the Code, § 12-104, provides that "In all cases of bailment after proof of loss, the burden of proof is on the bailee to show proper diligence," thus placing on the defendant the duty "of adducing evidence in rebuttal or in contradiction of that of the opposite party" (*Boss* v. *Ed & Al Matthews Inc.,* 51 *Ga. App.* 889, 895, 181 S. E. 688), and the fact that this affirmative duty of the defendant of producing evidence of its diligence may affect the determination by the jury of the preponderance of the evidence in the case, it is reversible error for the trial judge to relieve the defendant of the duty under this section and to charge the jury in effect that the defendant was under no duty of making any defense until the plaintiff had proved all of the essential facts of its case, including negligence, by evidence. See, in this connection, *Hyer* v. *Holmes & Co.,* 12 *Ga. App.* 837 (79 S. E. 58) ; *Lee* v. *Clements,* 48 *Ga.* 128 ; *Dodge* v. *Hatchett,* 118 *Ga.* 883 (45 S. E. 667) ; *Richardson & Co.* v. *Subers,* 82 *Ga.* 427, 430 (9 S. E. 172) ; *Red Cross Laundry* v. *Tuten,* 31 *Ga. App.* 689 (121 S. E. 865) ; *Johnson* v. *Perkins,* 4 *Ga. App.* 633 (62 S. E. 152) ; *Hawkins* v. *Haynes,* 71 *Ga.* 40 (1, 3) ; *Hight Accessory Place* v. *Lam,* 26 *Ga. App.* 163 (105 S. E. 872). We do not think that

this error was cured by the fact that the judge in other portions of his charge instructed the jury in the words of Code, § 12-104. The charge in this connection was in the language of the second paragraph of the decision of the Supreme Court in the case of *Chenall* v. *Palmer Brick Co.*, 117 *Ga.* 106, 108 (43 S. E. 443). That was a suit by a servant against his master wherein it was alleged that the master failed to furnish him with a safe place to work. It was essentially a different case from that here presented, and we are of the opinion that the language there used by the court, in so far as it had the above effect, was not applicable here.

■ The trial judge gave in charge to the jury Code, § 105-603, as follows: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases, the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." We do not think that the principle stated in this section had any application under the evidence in the present case. Upon the delivery of property to a bailee and his acceptance thereof, it is his engagement that he will exercise ordinary care in its keeping and handling. A bailor is under no duty to see that the bailee fulfills his engagement in this respect, nor can it be said that a bailor who learns of the negligent handling of his property is negligent in failing to rescind the bailment and take possession of his property. It may be true that a bailor may be held to have assumed known dangers of the place of bailment of which he actually knew or was notified by the bailee at the time of the bailment. *Wilensky* v. *Martin*, 4 *Ga. App.* 187 (60 S. E. 1074). There was evidence in the present case that the plaintiff, Richter, visited the storehouse of the defendant some two weeks before the fire. In view of this evidence we think that the charge of the trial judge was especially harmful. The plaintiff was not an expert warehouseman as was the defendant, and his presence on the premises can not be said to be any evidence sustaining the theory of contributory negligence on his part with reference to the negligent handling of his property. Furthermore, it does not appear that he was cognizant, in fact he could not have been cognizant, of the alleged negligence of the defendant thereafter occurring with reference to the negligent stacking of the pecans in close proximity to an unguarded electric light. We do not mean to hold that a

bailor may never be guilty, under any circumstances, of negligence which would bar recovery, but we do not think that the facts in the present case make the principle above charged in any degree applicable. See, in this connection, *Atlanta Cadillac Co.* v. *Manley,* 29 *Ga. App.* 522 (116 S. E. 35) ; Runkle *v.* Southern Pacific Milling Company, 184 Cal. 714 (195 Pac. 398, 16 A. L. R. 275); Stevens *v.* Stewart Warner Speedometer Cor., 223 Mass. 44, (111 N. E. 771).

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*