BRIDGET FOLEY, ADM'X FOR JEREMIAH FOLEY v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*Negligence—Presumption as to due care—Carriage of nitro-glycerine.*

A railroad company which undertakes to accommodate another company by switching over its track a car loaded with dangerous merchandise, has a right to assume that the consignor has exercised due care in packing it.

A manufacturer of nitro-glycerine contracted with a railroad company for the transportation of a quantity, and the latter requested another railroad company to move the car loaded therewith some distance

over its track. The company so requested sent a switchman to perform the service, and he was killed by the explosion of a can while it was being loaded. The loading was done by employees of the manufacturer, and the switchman had no control or authority over them. He however knew the dangerous character of the work. *Held* that there was no ground of action against the company which employed the switchman for the fatal injury to him.

Error to Marquette. Submitted June 15. Decided June 21.

CASE. Plaintiff brings error. Affirmed.

*G. W. Hayden* for appellant. A railroad company has a common law right to refuse to receive nitro-glycerine for transportation, on account of its dangerous character: Hutchinson on Carriers, §§ 113, 296; an employer is bound to use due care not to subject workmen to risks not necessarily incident to the service; *Swoboda v. Ward* 40 Mich. 421; *Clarke v. Holmes* 7 H. & N. 942; *Bartonshill Coal Co. v. Reid* 3 Macq. (H. L.) 300; *Smith v. Oxford Iron Co.* 36 Am. Rep. 535; *Ford v. Fitchburg R. R.* 110 Mass. 240; and must assume all that are not: *Marshall v. Stewart* 33 Eng. L. & Eq. 1; *Ryan v. Fowler* 24 N. Y. 414; *Perry v. Marsh* 25 Ala. 659; *Gibson v. Pac. R. R. Co.* 46 Mo. 163; *Noyes v. Smith* 28 Vt. 59; *C. & N-W. Ry. v. Bayfield* 37 Mich. 205; *Railroad v. Fort* 17 Wall 554; if he knows that a risk is exceptional he is as liable as if he had obtained all the facts within reach: *Williams v. Clough* 3 H. & N. 258; *Paterson v. Wallace* 1 Macq. H. L. 748; *Huddlestone v. Lowell Machine Shop* 106 Mass. 282; *Spelman v. Fisher Iron Co.* 56 Barb. 151: his failure so to do makes the master liable for all injury arising from the exposure of a workman to an unusual danger: *Keegan v. Railroad* 8 N. Y. 178; *Wonder v. Railroad Co.* 32 Md. 411; *Mellors v. Shaw* 1 B. & S. 437; *Grizzle v. Frost* 3 Fost. & Finl. 622; Cooley on Torts 554; when the servant is injured *by a temporary peril to which he is exposed by the master* by a negligent, positive act, the master is liable if the servant is without fault: *Lalor v. Chicago &c., Ry.* 52 Ill. 401; *Fairbank v. Haentzsche* 73 Ill. 236; *Indianapolis &c. Ry. v. Love* 10 Ind. 554.

*B. C. Cook* for appellee.    There is no liability for negli-gence where it was given effect only by the intervention of a third person: *Hoey v. Felton* 11 C. B. (N. S.) 142; *Mangan v. Atterton* L. R. 1 Exch. 239; *Saxton v. Bacon* 31 Vt. 540; *Reg. v. Ledger* 2 F. & F. 857; *Sharp v. Powell* L. R. 7 C. P. 253; *Stevens v. Hartwell* 11 Met. 542; *Shepherd v. Chelsea* 4 Allen 113; *Richards v. Enfield* 13 Gray 344; *Perley v. Railroad* 98 Mass. 414; *Crain v. Petrie* 6 Hill 522; *Ryan v. Railroad* 35 N. Y. 210; *Webb v. Railroad* 49 N. Y. 425: 3 Lans. N. Y. 453; *Hofnagle v. Railroad* 55 N. Y. 608; *Cuff v. Railroad* 35 N. J. 177 (a case of damage from nitro-glycerine); *Morrison v. Davis* 20 Penn. St. 171; *Denny v. N. Y. Cent. R. R.* 13 Gray 481; *Railroad Co. v. Reeves* 10 Wal. 190; *Bank of Ireland v. Evans* 5 H. of L. Cas. 389; *Dubuque Wood &c. Assn. v. Dubuque* 30 Ia. 183; *Daniels v. Ballentine* 23 Ohio St. 532; *Railroad v. Kellogg* 94 U. S. 475; *Pennsylvania R. R. Co. v. Fries* 6 Rep. 151; *Hoag v. L. S. & M. S. Rd.* 85 Penn. St. 293; *Waters v. Merch. Louisville Ins. Co.* 11 Pet. 213; *A. T. & S. F. R. R. Co. v. Stanford* 12 Kan. 354: 15 Am. Rep. 362; Eustachius a Sancto Paulo, Summa Philosophiæ Quadripartita, § 3, p. 39; Wood's Mayne on Damages 69; Whart. Negligence, § 134; Cooley on Torts 70.

COOLEY, J.    Action for negligently causing the death of the plaintiff's intestate.

The declaration avers that on the second day of January, 1878, the decedent was in the employ of defendant as a switchman, upon and about the switch locomotive number 241 owned and operated by defendant; that it was his duty as such switchman at the time aforesaid by the nature and terms of his employment to attend and be with said switch-engine in the handling of cars of ordinary freight and to perform the ordinary duties of an ordinary switchman in the defendant's service; that it was not contemplated in his employment that nitro-glycerine was an ordinary or proper freight, such as would be loaded into the cars of defendant to be handled by said switch-engine while he was employed

thereon, but that the handling of the same was extra-hazardous employment as to him and beyond and out of the line of his employment as such switchman; that on the day aforesaid there was a large lot of nitro-glycerine stored at a point on the line of defendant's road between Ishpeming and Negaunee, and decedent was ordered by defendant to go with said switch-engine and take a car to the place where the same was stored, to be loaded with the same, and to haul the same away when loaded; that such order was wrongful on the part of defendant and contrary to the employment of decedent; that nitro-glycerine is exceedingly explosive and dangerous; that the decedent had no experience with or knowledge of its dangerous qualities, and defendant wholly neglected and failed to inform him of its dangerous nature and qualities, or to warn or caution him as to any measure for his safety; that decedent obeyed said order, and proceeded with said switch-engine to the place where said nitro-glycerine was stored, and while there, and in the exercise of proper care, was killed by its explosion.

The negligence here charged against the defendant is seen to consist in sending him into the vicinity of a dangerous explosive without informing him of the danger and giving proper caution.

A second count sets out facts to show that the nitro-glycerine was improperly put up in ordinary tin cans wholly unprotected, and for that reason was specially liable to explosion in handling, and exposed those coming near it to more than the ordinary dangers. The allegation of negligence is substantially the same in the two counts.

The facts brought out on the trial were the following: Foley, at the time of the accident, was twenty-one years of age, and had been in the employ of defendant for two years. He had lived in the neighborhood for many years. It was a mining district, and nitro-glycerine was constantly made use of for mining purposes; the Lake Shore Nitro-Glycerine Company supplying 60,000 to 70,000 pounds a year. On January 1, 1878, that company contracted with the Marquette, Houghton & Ontonagon Railroad Company to trans-

port 4800 pounds of nitro-glycerine from Negaunee to Champion, a point on the last-named road, and for convenience it was brought to a point on defendant's road less than a mile from Negaunee, where the Marquette, Houghton & Ontonagon Railroad Company proposed to receive it. For this purpose an agent applied to defendant to switch the empty car of the Marquette, Houghton & Ontonagon road to the point where the nitro-glycerine was stored, and then to switch the loaded car back to Negaunee. It was upon this service that the decedent was sent. The defendant had nothing to do with the transportation of the nitro-glycerine except to switch the car as above for the Marquette, Houghton & Ontonagon Company, and it had nothing whatever to do with the loading of the car, which was done by the servants of the Lake Shore Nitro-Glycerine Company. The evidence tended to show that no accident from the handling of nitro-glycerine had ever before occurred among the mines in that part of the State; that it was not dangerous when properly put up and properly handled; that the fact of its being used for blasting in the mines was generally understood in the community; that decedent had at one time had its qualities explained to him by a person engaged in its manufacture, and that when he was directed to switch the car he understood for what purpose it was being sent to the place of loading. The accident occurred while the nitro-glycerine was being loaded.

The circuit judge instructed the jury that the facts put in evidence had no tendency to show negligence in the defendant; and they accordingly returned a verdict in defendant's favor.

If the nitro-glycerine was improperly put up in packages as the plaintiff claims, and for that reason its handling was extra-hazardous, there was no evidence that knowledge of the fact was brought home to defendant. The officers and agents of defendant had a right to assume that the Nitro-Glycerine Company was in the exercise of due care, and that its merchandise was in proper and safe packages. If it

had been, the evidence is conclusive that danger could only have come from improper handling. ·

The question then seems to be this : Whether defendant, in complying with a proper request from another railroad company to run for it a short distance one of its cars, to be loaded with an article which was safe when properly handled, but exceedingly dangerous when carelessly handled, was bound to assume that negligence on the part of those handling it would occur, and bound to take measures for the protection of its servants on that assumption. And if this question shall be answered in the affirm-ative, the further question will be presented : What measures of protection could the defendant take short of absolute refusal to move the car at all ? The switchman knew what was to be loaded and had a general knowledge of its qualities; but more particular and specific information to him on that subject would have been entirely without value. He was not to handle the nitro-glycerine, and he could exercise no control over the action of those who were. Caution from him on the subject would not be likely to receive attention from the men whose business it was, and who handled it constantly. The only caution to decedent which could have been of the least service would be the caution to keep away altogether. If he was entitled to this, it necessarily follows that defendant should have refused altogether to move the car over its track. But it was not claimed on the argument that this could have been properly and even lawfully done. Public Acts 1873, p. 506, § 10.

It was proved on the part of the plaintiff that when the order for switching the car was given, decedent was notified that the car must be kept out of the way of the passenger train which would be due after a time, and that if it was not loaded in due season it must be side-tracked. This, it is said, may have tended to cause haste and consequent care-lessness in the loading. There is not the slightest evidence that it did so, and the time before the passenger train would be due was shown to be ample. The order was probably needless, but it was an order of caution, not of negligence :

and the officer who gave it is to be commended, not blamed"

Further discussion of this case is needless. There was not the slightest evidence tending to fix upon the defendant, its officers or agents, any neglect of duty or any want of due care.

The judgment must be affirmed with costs.

The other Justices concurred.