### 126. HAINES v. CHAPPELL, administrator.

1. When the counter-affidavit to a distress warrant is dismissed, there is no case before the court. The dismissal of the counter-affidavit carries with it the replevy bond. There can be no judgment entered; for the distress warrant, without the counter-affidavit, is already a judgment and fi. fa.

2. Where a check is deposited in aid of a bond and to strengthen the security, the transaction is a bailment. The application of the check to any other purpose than that for which it was deposited is a conversion on the part of the bailee, and entitles the bailor to recover by trover the check, or the value thereof, with interest.

3. The bailee is such an agent of the bailor as that he is required not only to use the property for the special object only for which he was entrusted with it, and in conformity with the purposes of the trust, but to act in good faith where the interests of his principal are concerned.

Trover, from city court of Dublin—Judge Burch. January 8, 1906.

Argued February 19,—Decided March 22, 1907.

*William Faircloth, Hines & Jordan,* for plaintiff.

*George W. Williams, Ira S. Chappell,* for defendant.

RUSSELL, J. Haines brought an action in trover against Chambers, to recover a check for $82.50. Chambers defended by denying all the allegations of the plaintiff's petition. On the trial the jury found in favor of the defendant. The plaintiff moved for a new trial on the statutory grounds, the motion was overruled, and by writ of error we are asked to review the judgment on the motion for new trial. It appears, from the evidence, that one Dent swore out a distress warrant against one Guyton, and that Haines (the plaintiff in this case) signed a replevy bond as security for said Guyton, who had been distrained for $82.50. The defendant in trover was the bailiff who levied the distress warrant. It appears, that, some question having arisen as to the solvency of the replevy bond, Haines, in order to strengthen the security, gave the check which is the subject-matter of this suit. The understanding between Haines and the bailiff (now defendant) was that the latter was to hold the check with the bond, *as a bond,* until the final determination of the distress warrant between Dent and Guyton, and if Guyton lost on his defense, then he was to use the check in settlement of the distress warrant. The property levied upon, at the time that plaintiff gave the replevy bond and the check, con-

sisted of 333 bundles of fodder, 25 bushels of corn, and 573 pounds of seed cotton, also one mouse-colored mule. This property was released when Haines went security on the bond and gave his check. It appeared further, from the evidence, that there had been a former levy of the distress warrant upon two bales of cotton, one weighing 470 pounds and the other 502 pounds, which levy had not been dismissed. It further appeared that in his counter-affidavit to the distress warrant, which was produced in evidence, Guyton denied the indebtedness, and claimed that the same had been fully paid off. Upon the trial of the distress warrant the counter-affidavit was dismissed. Guyton certioraried the case, and in the superior court the certiorari was overruled. Counsel for Dent thereupon brought a rule against Chambers, as constable, alleging, that he had had placed in his hands a distress warrant in favor of B. J. Dent against Bill Guyton on September 16, 1902, with instructions to make the money, $82.50, by levy and sale of two bales of lint cotton made on the premises of the plaintiff in the distress warrant, and the property of the defendant, Guyton; that said Chambers, constable, failed and refused to levy the distress warrant on said cotton, but, on the contrary, without authority from plaintiff, sold said cotton to J. R. Dent, taking a check upon a bank, payable October 11, 1902, which check was not paid, but payment of same refused upon its presentation by Chambers; that Chambers has never made said money, and thereby petitioner is damaged $82.50. The defendant constable answered: it is true that he had the distress warrant placed in his hands, and now has it; he does not admit or deny that the two bales of cotton were pointed out to him or were raised on plaintiff's premises by Bill Guyton, but admits that plaintiff pointed out certain property for him to levy upon; he denies that he refused to levy the distress warrant; he admits that he accepted the check for $76.16, of which payment was refused. He further says, that he levied the distress warrant on certain mules as the property of Bill Guyton, and Bill Guyton made affidavit before J. T. Chambers, the justice of peace having jurisdiction, denying that he owed plaintiff on rent any amount for 1902, and then and there tendered him (the constable) bond in manner and form prescribed by law, and deposited with him $82.50, the amount of said distress warrant, to be paid to plaintiff in the event he (plaintiff) won his cause; that he (the

constable) went with plaintiff to seize said property, being two bales of cotton, and take it to his house, when plaintiff refused to allow him to seize it, stating that he preferred that he would take bond for it; and J. R. Dent claimed then to have purchased it for value before he had notice of plaintiff's lien, and defendant then accepted the check from J. R. Dent aforesaid, payment of which was afterwards refused; that he was informed and believed that J. R. Dent had so purchased the cotton in good faith, and that the same was not subject to distress warrant. He further answered that said case before the aforesaid justice of the peace was decided adversely to Guyton, who certiorared the cause to the superior court, where the same is now pending; and that he (the constable) has in his hands the said sum of $82.50, and is ready to pay the same over under order of court. Upon this evidence the jury found in favor of the defendant; and the judge refused a new trial.

We think that the plaintiff is entitled to a new trial, and that the overruling of his motion, under the evidence submitted, was error. This court stands unequivocally committed to the doctrine that the jury are arbiters of all issues of fact. *Davis* v. *Kirkland,* ante, 5. But when there is no evidence which, when applied to the law pertinent to the cause, will support the verdict, this lack of evidence constitutes an error of law. Under the undisputed evidence it can not be questioned that the check of Haines was deposited with the bailiff as a bailment. "A bailment is a delivery of goods or property for the execution of a *special object,* beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." Civil Code, § 2894. The bailee becomes, therefore, such an agent of the bailor as that he is required not only to use the property for the special object only for which he was entrusted with it, and in conformity with the purpose of the trust, but also to act in good faith with the bailor and his interests. The written receipt, as well as the testimony of the defendant himself, showed that the check was deposited as a bond for replevin in the matter of B. J. Dent *v.* Bill Guyton, distress for rent. This was the special object for which the check was entrusted to the constable, and yet, in his answer to the rule, the constable answered that he had in his hands the sum of $82.50, without informing the court that the counter-affidavit, the

bond, and consequently the check deposited, according to the terms of the receipt, as a bond, had all been dismissed. Certainly if either this plaintiff or the constable should suffer, it should be the constable. Furthermore, the rule which the officer was called upon to answer required him to show cause why he had not levied upon two certain bales of cotton, or why, having levied upon the cotton, he had not made the money out of it. And it appears that he had levied upon it and sold it, without authority of law, for a worthless check; and it appears plainly to us that after this action he determined to save himself by converting the plaintiff's check to his own use; for in disposing of the check in a manner not authorized by the terms of the agreement under which he received it, this disposition amounted to a conversion, which at once terminated the bailment and the defendant's right of possession, and entitled the plaintiff, by trover, to recover his check or the value thereof.

The defendant insists, however, that the certified check was not deposited with him as a bond, nor as strengthening a bond, but as a conditional payment of the distress warrant in the event that the case went in favor of the plaintiff in the distress warrant. We find no such evidence in the record. The receipt taken at the time, as shown by the brief of evidence, stated that the check was deposited as a bond for the replevin in the matter of B. J. Dent v. Bill Guyton, distress for rent, and that if Bill Guyton finally lost the case A. B. Chambers would have the check to indemnify him and apply it to the payment of claim for rent. This receipt, being in writing, afforded, under a well-known rule, the best evidence of contract of bailment; but, to place the matter beyond any dispute, the record gives the testimony of the defendant himself, as follows: "I agreed [to release the property], thinking that money would be a legal bond." There was, therefore, no evidence on the part of either this plaintiff or the defendant to contradict the purpose of the bailment, as contended for by the plaintiff, that it was to take the place of the replevin bond. When the counter-affidavit was dismissed, the plaintiff had no case, and a judgment for the plaintiff for the amount of rent claimed could not be rendered. So that if, as insisted by counsel for defendant, the check was deposited as a conditional payment of the rent, the position of the constable would be no better than if it is assumed (as is shown by the evidence) that it was deposited to strengthen the replevin

bond; for constables, like other citizens, are presumed to know the law. And if this constable had acted with the good faith imposed by law upon him as regards his bailor, and had answered, in response to the rule against him, that he had had deposited in his hands a check for $82.50, and had attached thereto a copy of the receipt which he was required to sign before he received plaintiff's certified check, instead of answering that he had $82.50 in his hands (though it was more than·three months before he collected the check), we hardly think that upon this statement of the facts any judgment would have been entered up against him for $82.50, though there might have been a judgment entered up against him for the value of the two bales of cotton, which he levied upon, as appears by the record, on September 16, 1902, more than .two months before the levy which is the occasion of this suit, and which,. if the constable had not, without any authority of law, sold for a check which was worthless, might have fully paid the claim of the plaintiff in the distress warrant. In collecting the check and paying the money therefrom, not on the bond which the plaintiff in error had signed, and to further secure which he had given his certified check (for this bond had been dismissed with the counter-affidavit), but applying the check to relieve himself from a rule brought for an apparent dereliction of duty, more than two months before the bailment of the plaintiff in error, the defendant in error was clearly guilty of a conversion; and for this conversion the plaintiff was entitled to recover his check or the value thereof, with hire. If there was any question of conflict in the evidence as to any issue which could lawfully be presented, the verdict of the jury would remain undisturbed. But we are unable to overrule the well-settled principle that when a counter-affidavit is out of court the entire case goes out with it (*Andrews* v. *Blount,* 67 *Ga.* 41; *Habersham* v. *Eppinger,* 61 *Ga.* 199; *McCulloch* v. *Good,* 63 *Ga.* 519), and can not repeal §2894 of the Civil Code, nor find in the record any evidence in conflict with that of the defendant in error himself as to his understanding that he agreed to release the property, thinking that the money would be a legal bond, and yet (though an agent of the plaintiff in error) applied it to relieve himself from a rule involving a different levy. We must, therefore, reverse the judgment of the court below and order a new trial.

*Judgment reversed.*