272.   MORRIS STORAGE AND TRANSFER CO. *v.* WILKES.

1. A bailment implies and requires, on the part of the bailee, the utmost good faith as to every matter whereby the rights of his bailor may be affected. This is not the imposition of extraordinary diligence.
2. While a bailee or depository for hire is not bound to exercise extraordinary diligence in the care and keeping of his bailment, still he is bound to ordinary diligence, measured by good faith towards his bailor,—a golden rule of the law,—the same diligence in the preservation of the bailor's property as in the preservation of his own.
3. When property in the custody of a bailee for hire is demanded by a third person under color of process, it becomes his duty to ascertain whether the process is such as requires him to surrender. If the proceeding is illegal or void, it is the right and duty of the bailee to refuse to surrender the property of the bailor committted to his care; it is his duty to offer such resistance to the taking and to adopt such measures for reclaiming it, if taken, as a prudent man would if his own property had been demanded and taken under a claim of right without legal process.

Action for breach of contract, from city court of Atlanta— Judge Reid.   September 11, 1906.

Argued April 18,—Decided May 9, 1907.

Mrs. Wilkes sued for $300 damages on account of the failure of the defendant storage company to deliver to her, on demand, certain household goods that she had entrusted to it for keeping. It appeared that the defendant had suffered the goods to be removed from its warehouse upon the exhibition, by a constable, of a paper purporting to be an attachment in favor of the R. S. Crutcher Furniture Company against Mrs. Wilkes. Under the evidence and the court's charge the jury found for the plaintiff $175; and the defendant excepted to the refusal of a new trial. For the other facts see the opinion.

*Arminius Wright,* for plaintiff in error.

*R. B. Blackburn,* contra.

RUSSELL, J. The plaintiff in error complains, that its motion for new trial was refused; and this is the only assignment of error in the bill of exceptions. The motion was based on the general grounds, and on four grounds which were added to the original motion by amendment. We will first consider the amended grounds, because, under the ruling of this, court in *Crankshaw* v. *Schweizer,* ante, 363, there is no merit in the general grounds, unless some error produced or contributed to the result and the verdict complained of.

The first ground of the amended motion is, that the verdict is contrary to the evidence on the subject of value, and not authorized by the evidence. Plaintiff in error insists that in no event could the verdict have been greater than $100, that the only evidence offered by the plaintiff on the subject of value, delivered by the husband of plaintiff, was to this effect. It is true that the husband of plaintiff testified, on cross-examination, that "they would have brought about one half of what they cost had they been sold;" but this was not the only evidence on this subject. Not only did the plaintiff's husband swear as above quoted, which was merely his belief of what the goods would bring at a forced sale, but in further testifying, he said that the furniture in question cost $200, that it was still not quite a year old, and that he could not have gotten the same furniture at the time it was taken from the storage company for what he bought it for. C. A. Morris, of the defendant company, testifying in its behalf, it is true, placed the value at $50, $75, or $100; but on cross-examination he admitted that, at a forced sale, household goods, such as the personal property in question, very seldom brings what it is .worth, and gave his opinion, as an expert, that if he had household furniture that answered his purpose and which originally cost $200, and which it would take $200 to replace, the furniture taken away from him would be equal in value to the new furniture. We think that the jury had the right, under the evidence, to fix the value of the property at the amount of their finding, under the proper charge of the court upon the subject of value: "The question of value is one of fact, which you will decide for yourself. You are not bound by the opinion of a witness as to value, you are

not required to take opinions as representing the value of the articles mentioned. You will take into consideration all the evidence that will illustrate the question to you; take into consideration the opinion of witnesses as given to you; take into consideration what it cost to purchase the goods, if the evidence discloses it; take into consideration what it would cost to replace the goods, if the evidence discloses it, and all the evidence on the subject that will illustrate the subject, and then yourself decide what sum would represent a reasonable and proper value of the articles involved; and that sum, if the plaintiff recovers, should represent the amount of her recovery." Under the evidence above referred to, the jury would have been authorized to base their finding on the testimony in favor of the plaintiff, on this subject, in preference to that of the bailiff, who is denominated an expert, or the witness who did the multifarious service of swearing out the attachment, going security on the bond, and separating and seizing the property in question, and finally giving expert testimony in behalf of the corporation.

The second ground of the amended motion complains that the court refused to allow the defendant to show that Mrs. Wilkes was indebted to one Crutcher, for the property for which she was suing, and upon which the attachment was levied, for the purpose of recovering the purchase-money of the same. There was no error in this ruling." The reply of the trial judge, in rejecting the evidence offered on this subject, was exhaustive, when he said, "You can not take her goods and pay Crutcher's debt." In the fourth ground of the amendment to the motion, the plaintiff in error complains that the verdict is contrary to the charge of the court, quoted above. This ground, for the reason stated above, is not well taken.

The last ground of the amended motion asks for a new trial on the ground of newly-discovered evidence. The evidence discovered after the trial and verdict purports to be a certain conditional bill of sale, signed by the plaintiff, and in favor of R. S. Crutcher Furniture Company, describing the goods sued for in this case, by which title to the goods was reserved in the furniture company, and it was provided that in default of payments therein stipulated the furniture company should have the right to take possession of the property "without any legal process." We

48

think the court rightly refused to grant a new trial on this newly-discovered evidence, because the most ordinary diligence, under the circumstances of the case, would have disclosed the existence of the document in question before the trial. The Morris Transfer & Storage Company did not deal with the R. S. Crutcher Furniture Company as with strangers afar off. The record does not disclose the exact distance which separates their respective places of business, but it does disclose the fact that they are both in the city of Atlanta, and upon terms of comity, if not of amity, by reason of which any inquiry addressed by the one to the other would have received a truthful response. For the evidence disclosed that the storage company actually allowed the agent of the Crutcher Company to go into the storage company's warehouse, take out the property that they identified, and move it to the Crutcher Company's place of business before any attachment was levied. The goods were carried away in Mr. Crutcher's wagon. The bailiff testified, that "Mr. Poole [an employee of the Crutcher Company] was at the storage company's; that Mr. Crutcher telephoned me to meet him there; and when he did come there, the goods had been taken out of the storage, and were ready to be loaded up." Every circumstance of the delivery shows that if the storage company had been only as anxious, in good faith, to protect and care for the property of its bailor (in the same manner as it would if the property in question had been its own) as it was to accommodate Crutcher, even the slightest degree of diligence would have caused it to inquire whether Mr. Poole, as agent for Crutcher, did not have, as his conduct would have indicated, title to the goods in question.

Motions for new trials upon the ground of newly-discovered evidence are not favored by the law, and should not be. They are tolerated where it is apparent that grave injustice would result unless the newly-discovered evidence is admitted on another trial; and only then when it is clear that ordinary diligence could not have discovered the evidence sought to be adduced, and that a different result in view of the discovery ought to obtain. As said before, we think that ordinary diligence would have discovered the additional bill of sale; and, therefore, there was no abuse of discretion on the part of the trial judge in overruling this ground of the motion for new trial. And we are not clear that even if it

could not have been discovered and a new trial ordered, the result of the trial should be different. The only province of this conditional bill of sale would be to show that under certain conditions the R. S. Crutcher Furniture Company had the right to take possession, without legal process, of the property described in the bill of sale. This might be a good contract between Mrs. Wilkes and the furniture company, but the effect of its being authority to the bailee to deliver the goods on mere demand would be to make him the judge and jury to determine whether or not the contract had been fully complied with and all payments made, whether the property in his possession was the same as that originally sold by the Crutcher Company, and whether the instrument offered was in fact ever executed by Mrs. Wilkes. As he would occupy his position as court and jury at his own risk, this ground of the motion is imperfect, and was rightly overruled by the trial judge, unless the ground of newly discovered evidence had been supplemented by proof showing that the payments had not been made. As the purported bill of sale is dated November 21, 1899, and the payments are provided to be at $10 a month, if they had been promptly met, all payments would have been fully made and the contract discharged long before 1902, which was the date of the storage; and the very provision for repossession of the property upon default of any of the payments might give rise to the presumption either that the payments had been met, or that the stipulation with reference to taking possession of the property without legal process had been waived. In our judgment the verdict was right, and the trial judge was right in overruling the motion for new trial upon all of the grounds therein stated.

It is undisputed, from the evidence, that the plaintiff stored her household furniture with the defendant for safekeeping, upon agreed valuable consideration. The defendant became thereby a bailee for hire. Under the Civil Code, §2930, a warehouseman is a depository for hire, and is bound even for ordinary diligence; and failure to deliver the goods on demand makes it incumbent on him to exercise ordinary diligence. And under the Civil Code, §2896, "In all cases of bailment, after proof of loss, the burden of proof is on the bailee to show proper diligence." Under the facts disclosed by the record, the defendant in error showed the bailment, the proof of loss, and established demand upon the

bailee. This should be a prima facie case. Did the plaintiff in error shift the burden? Its defense was, it delivered the property to an officer of the law under legal process. It was bound by law to ordinary diligence in caring for and keeping it. The Civil Code, § 2898, says, "Ordinary diligence is that care which every prudent man takes of his own property of similar nature." As was held by this court in *Haines* v. *Chappell*, ante, 480, the bailee is not only bound for ordinary diligence, but he must exercise good faith in his relations with the bailor. This good faith is measured by a golden rule of the law: the same diligence by the bailee for the bailor's property as for his own; doing for the bailor as he would do for himself.

Measured by this rule, it would have taken a wide stretch of the imagination on the part of the jury to conceive that the defendant would have acted as to property it believed to be its own as it did act with reference to the delivery of the bailor's property in this case. Could the jury have reasonably believed that if the Crutcher Company had laid claim to property of the storage company of similar nature, the storage company would, without let or hindrance, have allowed an agent of the furniture company to go into its warehouse and select for the furniture company such property as he claimed belonged to it, and would have delivered it to him and taken his receipt therefor and allowed him to carry it to the sidewalk, receiving directions from a bailiff who was acting under process absolutely void, and have made no inquiry or protest in the premises?

The very able counsel for plaintiff in error, of course, does not and can not deny that the attachment was void. The affidavit did not state that the property was in the possession of the defendant, or in possession of any other person who held it for the benefit of the debtor in fraud of the attaching creditor; and no valid bond was given, because the affiant to the affidavit to obtain the attachment was the surety on the bond, and the agent who separated and moved the goods. But the plaintiff in error contends that he should not be held liable for the delivery to the constable of the goods described. Waiving the facts that the receipt in the record shows that the goods were delivered to Crutcher, and not to the constable, and admitting for the sake of argument, that delivery was made to the constable, we do not

think that the position assumed by plaintiff in error, that he de-livered the goods because he thought he was compelled to deliver them to the constable, affords him any defense.  A knowledge of the law is presumed.  The bailee, like every other citizen, is pre-sumed to know the law; and if he did not, he is presumed to in-quire as to it before he would allow his property taken from him. So he should inquire before allowing property entrusted to his care to be taken therefrom; and if he misjudges, it is at his own risk.  Such a requirement is not, as contended by counsel for plaintiff in error, an imposition of extraordinary diligence, but is the application of ordinary diligence in the spirit of good faith required on the part of a bailee.  He must protect the bailor's property and regard the bailor's rights with the same care that he would his own.  To sustain the contention of the plaintiff in er-ror, that it was not its business to inquire into the apparent de-fects in the attachment proceedings, but simply to surrender the property of the bailor, under the circumstances disclosed, without any liability to account therefor, would be to abrogate the funda-mental principles recognized as governing bailment for hire.  It would be to say that if a stranger knocked at the bailee's door and claimed to be an officer of the law, and claimed to have a proc-ess from a court, it was his duty to surrender the property held by him in trust, without even going to the trouble of investigating the genuineness of the paper, as to its legality or the right of the holder to carry away the property.  To state such a position is to decline to receive it seriously.

The plaintiff in error contends further, that he exhausted the requirement as to ordinary diligence by notifying one Mr. Johnson of the levy.  The ordinary diligence required by the bailee is to be ascertained in every case, as a question of fact, by the particu-lar circumstances of the case.  Negligence and diligence are pe-culiarly questions of fact for the jury.  If the evidence had shown that Johnson was the agent of the bailor, the jury would have been authorized to find that the storage company exercised ordinary diligence in bringing knowledge of existing conditions to the bailor through her agent.  She could then have protected herself. But the burden of proving the agency, as the bailee had parted with the property, was upon the bailee, who failed to show that Mr. Johnson was in any respect the agent of the bailor for any

purpose whatever, the evidence being undisputed that Mr. Johnson only introduced the agent of the bailor to the bailee, and thus provided it with a customer. The right upon this subject was clearly presented to the jury by the trial judge, and their finding that Johnson was not the agent of Mrs. Wilkes was demanded by the evidence.

It being admitted in argument before this court that the attachment levied upon the goods in question was void, counsel insists that the rule of ordinary diligence did not require the bailee, at expense to himself and at the risk of a forcible entrance of his warehouse by an officer, to take steps to resist the process, although void. We fail to find any case in which the exact question has been determined in this State. But in view of what we have stated above as to the good faith required of the bailee, in the exercise of ordinary diligence, where the rights of the bailor are affected, and especially in view of the definition contained in the Civil Code, § 2898, we think the ruling in Robert *v.* Stuyvesant Safe Deposit Co., 123 N. Y. 57, is persuasive authority upon the point involved. That case was an action to recover damages for the alleged negligence of the defendant as a bailee for hire. The Stuyvesant Company, like the defendant in this case, was a corporation receiving property on deposit, as bailee, for safe keeping and storage. The plaintiff, as in this case, was a woman. The process to be enforced was a search warrant being served by an officer, but the process was invalid. The defendant's officers protested against the seizure of the bailor's property, but they furnished the levying officer with the means to identify its whereabouts, and he thereupon made the seizure. The facts of the two cases are similar, except that the Morris Storage Company did not even protest against the levying of the attachment. In the New York case, as in this, the levy or seizure was made after the bailee had pointed out the property and surrendered its possession. The trial court held that the defendant performed its duty with reference to the property which it held as bailee, but the Court of Appeals reversed that judgment and held, as we hold here, that the defendant neglected to exercise that degree of diligence and fidelity to which it was bound, in the care and keeping of the property which the plaintiff had confided to its charge. In rendering the opinion the court says: "The persons who took the property had

no process that authorized them to do so; and hence the defendant had the right to make such resistance to it as they would have had if the same parties attempted to take it without any process whatever, and if overcome by superior force they could pursue and reclaim it by legal proceedings or otherwise in the same manner as if the search warrant had not been procured. When property in the hands of the bailee for hire is demanded under color of process, it becomes his duty to ascertain whether the process is such as requires him to surrender the property, and if it is not, then it is his right and duty to refuse and to offer such resistance to the taking, and adopt such measures for reclaiming it, if taken, as a prudent and intelligent man would, if it had been demanded and taken under a claim of right to the property by another without legal process. The defendant did not discharge the duty that it owed to the bailor and owner of the property by merely making a formal protest against entering the vaults where the property was. A person who would allow his own property to be taken away from him under like circumstances, and without doing more to prevent such a result, or to repossess himself of it when taken, could scarcely be called a prudent man."

*Judgment affirmed.*