### 977. WILENSKY *v.* MARTIN *et al.*

1. Agistment is a species of bailment, and the agistor must exercise the ordinary care of a prudent man as to animals placed in his care. An agistor is liable for his own negligence and for the negligence of his servants, but he is not an insurer. In the absence of a special contract, he is only bound to exercise such care as a man of ordinary prudence would use under the same circumstances towards his own property.

2. The liability of an agistor may be limited by a special contract. Assent to the stipulations of a parol contract may be implied by silent acquiescence.

3. The question as to whether an agistor is or is not negligent is one of fact, and for the determination of the jury; and in cases of agistment the jury have the right to take into consideration the usages and customs prevailing upon the subject, and also the traits, qualities, and characteristics of the animals being pastured, as well as the fact that the negligence of the owner may, more or less, have contributed to the injury of which complaint is made.

Certiorari, from Chatham superior court—Judge Cann. November 23, 1907.

Submitted February 25,—Decided April 9, 1908.

*W. H. Boyd,* for plaintiff. *Wilson & Rogers,* for defendants.

. RUSSELL, J. The plaintiff placed his horse in the pasture of the defendants as agistors. The horse was blind, and fell into an uncovered well in the defendants' pasture and was killed. A suit

was brought to recover the value of the horse, which the agistors refused to pay, relying upon the fact that they informed the agent of the owner of the horse, when they received the animal, that there were at least a dozen places in the pasture where a blind horse might be killed. The jury returned a verdict for the defendants. Exception is taken to the order of the judge of the superior court overruling the plaintiff's certiorari.

We find no error in this judgment. We will first consider the general nature of a contract of agistment, and then inquire whether the liability of the bailee in such a contract of bailment may be limited by the express terms of the special contract, and next, whether the jury were authorized to find that the defendants were not liable, either because the special terms of the contract had been complied with, or because, under the particular circumstances of the case, the plaintiff himself took the risk of the conditions which surrounded his animal and which were the cause of its death.

1. Agistment is one species of bailment, and, ordinarily, the prudent agistor must exercise the same care towards animals placed in his charge as towards his own property. The same golden rule of diligence to which we referred in *Haines* v. *Chappell,* 1 *Ga. App.* 480 (58 S. E. 220), and *Morris Storage Co.* v. *Wilkes,* 1 *Ga. App.* 751 (58 S. E. 232), applies to agistor (in the absence of a contract limiting his liability) as applies to other bailees. An agistor is liable for his own negligence and for the negligence of his servants. He has been held to be liable for turning an animal into a field where another vicious animal was at large, and for allowing strangers to enter his stable at night, so that horses escaped and were lost; for leaving his fences down, by reason of which cattle strayed away and were stolen; and also for damage due to his negligence in the communication of contagious diseases, as well as for failure to provide suitable pasture. But an agistor is not, like an innkeeper or carrier, an insurer. In the absence of a special contract, he is bound only to exercise ordinary and reasonable care,—such care as a man of ordinary prudence would use under the same circumstances towards his own property. In many jurisdictions it is held that one who claims that he has been damaged by the negligence of an agistor must establish that fact. Story on Bailments, §§ 213-278, 454; Calland

*v.* Nichols, 30 Neb. 532 (46 N. W. 631); Dennis *v.* Huyck, 48 Mich. 622 (12 N. W. 878, 42 Am. R. 479); Rey *v.* Toney, 24 Mo. 600 (69 Am. Dec. 444). Other authorities hold that where loss is shown, the burden is upon the agistor to relieve himself by proof that it was not occasioned by his negligence. In Georgia, by the provisions of the Civil Code, §2896, when loss has been shown, the burden of proof is upon the bailee to show proper diligence.

In the present case the plaintiff sent to the defendants a horse practically blind, to be pastured. It was sent by the plaintiff's agent and servant. Prior to the sending the plaintiff and one of the defendants had a conversation over the telephone, but this amounted to nothing except an inquiry on the part of the plaintiff as to whether the defendants had a pasture and would take his horse, and a reply to these questions. The defendants had never seen the horse until brought by the agent, and did not know until then that he was blind. The plaintiff had never seen the pasture, in which were an uncovered well about 15 or 20 feet deep, an old canal about 6 feet deep, and several dangerous holes. When, however, the plaintiff's servant brought the horse and the defendants saw it was blind, they told the plaintiff's agent that there were more than a dozen places in the pasture where a blind horse might be killed. In spite of this warning, and perhaps without the defendant's knowledge, the plaintiff's agent put the horse in the pasture, and some time thereafter it fell into the well and was killed. The jury was authorized to find that he who carried the horse to the pasture was the plaintiff's agent, and that a notice to him was equivalent to notice to the owner. In our view of the case the placing of the horse in this dangerous pasture, after notice had been given of the danger, was, in effect, the creation of a contract by which the agistor limited his liability so as to exclude any casualty which might result from the well, the canal, or the holes in the pasture. As to these the owner himself assumed the risk, and therefore the defendants can not be held liable for an injury which resulted, not from negligence of the agistor in any given particular, but from the dangerous character of the place; of which the plaintiff, through his agent, was fully apprised. The defendants could not be liable for the plaintiff's servant's lack of diligence to disclose to the plaintiff the holes in

the pasture or inform him of the character of the place, so that he could determine whether he wished to assume the risk. The agistors had the right to assume either that the servant was fully authorized to act in behalf of the master in putting the animal in the pasture after knowledge of its inherent defects, or that the master, having been informed by the servant and still allowing the horse to remain there, had himself determined to assume the risks.

2. In every contract of bailment the bailee, except where he is a common carrier, has the right to limit his liability by special contract. A contract of agistment is no exception to the general rule. Upon grounds of well-settled public policy, a common carrier is not allowed to limit his liability, but there is no reason why one who takes cattle to pasture can not, by an express contract, relieve himself from liability for any negligence not so gross as to amount to fraud. It is a debatable point whether negligence can ever be fraud. As it appears to us, the two things are not akin. But this is the doctrine of some writers, including Sir William Jones. However that may be, there was no fraud in this case, because the defendants put the plaintiff (through his agent) fully on notice of the dangerous condition of the pasture, as to the blind horse.

3. We think that the jury were fully authorized to find that the contract of agistment in this case relieved the defendants from liability. It can well be inferred, that the tacit assent of the plaintiff's servant to the defendants' declaration that they would not be liable,—that there were a dozen places in the pasture where the horse might be killed,—incorporated into the contract a limitation excluding any liability on the part of the defendants for injury resulting from the well or the canal; and, as the injury resulted from the well, it follows that the defendants were not liable at all. This case seems to us to be quite similar to Mansfield *v.* Cole, 61 Ill. 191, in which the court held that as the owner knew his horse was "breachy," and was liable to break out and be lost, he ought to have contracted for extraordinary care. But regardless of this, the whole question as to whether or not an agistor is or is not negligent in a given case is one of fact for the jury (*Arrington* v. *Fleming,* 117 Ga. 449, 43 S. E. 691, 97 Am. St. R. 169), and is affected largely by custom and local usage, as well as the controlling principle that the agistor, while he must exercise ordinary diligence as to animals placed in his care,

is not ordinarily required to exercise greater diligence in the preservation of the live stock of others than is necessary for the safety of his own. As the pasture contained other animals, and as the evidence discloses that the well and the canal and other excavations were not objects of danger to a horse with good eyesight, either in the day or at night, and as the plaintiff's agent was informed of the danger so far as blind horses were concerned, the jury could well infer that the plaintiff, by assuming himself the risk of which the defendants had notified him, contracted to relieve the defendants of any liability on this account. The certiorari was, therefore, properly overruled. *Judgment affirmed.*