31589. GULF LIFE INSURANCE COMPANY *v.* McDANIEL *et al.*

DECIDED JULY 15, 1947. REHEARING DENIED JULY 29, 1947.

**550**

*Smith & Long, Joe Tindall, R. M. Maxwell,* for plaintiff in error.
*Dorsey & Hames, Gordon B. Gann,* contra.

PARKER, J. Mrs. Jennie McDaniel sued James A. Rainwater and Gulf Life Insurance Company for damages on account of the death of her husband, Frank McDaniel, who died from injuries received when struck by an automobile owned and being driven by the defendant Rainwater on May 17, 1946. The jury returned a verdict for $7000 for the plaintiff and against both defendants. Gulf Life Insurance Company made a motion for a new trial, which was amended by the addition of one special ground merely amplifying the general grounds; and excepts to the overruling of its motion.

It is conceded by counsel for the parties that only one issue is presented for the consideration of this court. Counsel for Gulf Life Insurance Company contend that the defendant Rainwater was, at the time he injured the plaintiff's husband, an independent contractor, and not the servant of the company so as to make it liable for his negligence under the doctrine of respondeat superior. It seems to be agreed that, if the relation of master and servant existed between the insurance company and Rainwater, the company would be liable to the plaintiff; but that, if that relationship did not exist and Rainwater was an independent contractor, the company would not be liable.

Rainwater was an agent and employee of Gulf Life Insurance Company in Marietta, Georgia, with authority to take applications for industrial life-insurance policies within a prescribed area in Marietta and Smyrna, and for ordinary life insurance anywhere within the State of Georgia. In connection with the industrial life-insurance business, he also made collections of premiums weekly for the company on policies in force within a prescribed area, known as a "debit." The contract under which Rainwater was employed was as follows: "In consideration of having been appointed an independent contracting agent of the Gulf Life Insurance Company of Jacksonville, Florida, I hereby agree to comply with all the rules and regulations, written or otherwise, of the company now in effect or subsequently established; to use my utmost endeavors to promote the company's welfare; to handle col-

lections and canvass for new business faithfully and thoroughly.; to make prompt remittances of all collections. To accept, as full remuneration for services, commissions on collections and new contracts written by me, which shall be computed on fixed percentages promulgated by the company from·time to time, I understand and agree that all commission percentages are subject to change without notice. I further agree ·that any advance or advances to me by the company shall not be considered a salary or guarantee. I acknowledge the right of the company to revoke this appointment at its pleasure upon one-week's notice. I recognize that the business belongs solely to the company and all records and supplies are held by me in trust and same shall be delivered to the company upon the termination of this agreement for any cause; that neither said business nor this agreement is assignable. I further agree to furnish the company, at my own expense, a good and sufficient bond and to pay all licenses required by law."

It appears from the evidence that Rainwater worked in the office of the company all of Saturday morning, the day of the injury, and in the afternoon he drove a car owned by himself and used by him in his business to Roswell, Georgia, some "10 or 15 miles" from Marietta, for the purpose of calling upon a prospect for ordinary life insurance. The Town of Roswell was not in Rainwater's debit area as to industrial insurance, but was within his territory as to ordinary life insurance. Upon returning to Marietta late in the afternoon, Rainwater was going to the office of the company to get certain forms that he needed to use in reviving some insurance policies which had lapsed in his debit. He intended to see certain policyholders on Saturday evening and needed these particular forms. He was on his way to the office when the injuries for which the plaintiff sued were inflicted upon her husband. The evidence showed that Rainwater was pursuing the most direct route from Roswell to the company office when he struck the plaintiff's husband with his ·automobile and inflicted the fatal injuries upon him.

J. M. Jackson, superintendent of the company's Marietta office, testified for the plaintiff: that Rainwater was employed generally to represent the company in the sale of insurance policies and to make collections on his debits; that his employment could be terminated by the company at its will, and "as to whether the manner

in which he pursues his duties is prescribed by the company—the manner in which he does it, yes, of course. As to who instructs him in the performance of his duty—we have a company manual that explains everything in the debit. He is supposed to study that, and I am supposed to instruct him, especially a new agent. I am supposed to explain the duties and that, of course, I do, try to help him learn the business and get started. He is supposed to go by his company's manual as to his procedure. I have authority to discharge him for failure to comply with the rules and regulations. . . He can not represent any other life, health, or accident insurance company. He would be subject to dismissal according to the company's rules for that. . . As to whether he could perform the duties that are required of him by the company without the use of an automobile, no, sir. . . As to whether his principal activity with the Gulf Life Insurance Company is the writing and collecting of premiums in industrial life, I would not say that is his principal activity because one is about as important as the other. His time is largely taken up with his debit, and in his debit he is required most of the time." After testifying that the defendant company did not care when or how or at what hour of the day or night the defendant Rainwater chose to do his work of calling upon the policyholders and making collections, Jackson testified: "As to whether he can be there in the daytime or night time, well, I don't want him to be there at night, it would wake some of them up (referring to the policyholders). Some folks expect you to call there after they get off from work, but we try to eliminate that as much as we can." And "as to whether or not the company required Mr. Rainwater to have a car, and as to whether or not I have ever employed a man in the office who did not have an automobile, no, sir. As to whether that is a requirement of mine because of my knowledge of the debit and the requirements which would be put on a man that the debit is assigned to, yes, sir." The evidence showed that Rainwater used his own car and the company paid him an allowance of $2.50 per week for traveling expenses.

The defendant Rainwater testified in part as follows: "Mr. Jackson is my supervisor. As to what his job is, he tells us what to do on some things. . . He is in charge of the office here in Marietta. As to whether I look to him as my boss, yes, sir. As

to whether he supervises the details of the work, not all of it, no, sir. He does in some of the details. As to lapses—well, if we carry it over four weeks, it must show and he takes it. If he thinks something should be lapsed, he lapses it. We know to lapse it in four weeks without him telling us, but sometimes he tells us to hold it over. . . As to whether I have a fixed territory for the collection of premiums on policies—all industrial, yes, sir, I have a fixed territory. . . Mr. Jackson fixes my 'debit.' I am required to make regular or frequent calls on the policyholders within my debit. . . We have certain fixed days to call on them, yes, sir. . . As to whether there is any fixed time to report weekly to Mr. Jackson, yes, sir, we clear our account on Wednesday. . . On Wednesday I clear the account and at that time I account for collections from Thursday to that date. I turn over to Mr. Jackson the complete amount of the collections without deductions. . . As to whether there are any specific times I am required to be in the office of the Gulf Life Insurance Company—well, I go in there on Wednesday and on Saturday until 12 o'clock, and we usually report there every morning. As to whether that is by privilege or requirement, it is by requirement. Mr. Jackson requires me to be there."

"The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer." Code, § 105-501. "The employer is liable for the negligence of the contractor . . 5. If the employer retains the right to direct or control the time and manner of executing the work; or interferes and assumes control, so as to create the relation of master and servant, or so that an injury results which is traceable to his interference." § 105-502. Whether or not Rainwater was the servant of Gulf Life Insurance Company under the facts of this case was a question for determination by the jury. *Edwards* v. *Gulf Oil Corp.*, 71 *Ga. App.* 649 (31 S. E. 2d, 677). "This court stands unequivocally committed to the doctrine that the jury are arbiters of all issues of fact." *Haines* v. *Chappell*, 1 *Ga. App.* 480, 482 (58 S. E. 220). Another rule of law applicable here is that after verdict that view of the evidence which is most favorable to the prevailing party must be taken, for every presumption and every inference is in favor of

the verdict. *Mutual Life Ins. Co.* v. *Barron,* 70 *Ga. App.* 454, 457 (28 S. E. 2d, 334) ; *Sanders* v. *Chandler,* 71 *Ga. App.* 337, 341 (30 S. E. 2d, 813) ; *Scott* v. *Imperial Hotel Co.,* 75 *Ga. App.* 91 (42 S. E. 2d, 179). .The jury having decided the controlling issue of fact in favor of the plaintiff, the only question open is whether or not there was evidence to support the jury's conclusion.

Beginning with the written contract under which Rainwater was employed, we find that he agreed to comply "with all the rules and regulations, written or otherwise, of the company now in effect or subsequently established." He agreed to accept as compensation for his services certain commissions on collections and new contracts written by him, "which shall be computed on fixed percentages promulgated by the company from time to time," and which commission percentages were subject to change without notice. He also acknowledged "the right of the company to revoke this (his agency contract) appointment at its pleasure upon one-week's notice." These elements in the contract indicate and tend to establish a relationship of master and servant, under which Rainwater was subject to control, supervision, and direction by the company. The general import of the contract between the parties was that the company had the right to control the agent in the details of his work. The oral testimony, set out at some length, tends to show also that the manner in which Rainwater pursued his duties was prescribed by the company; that he was instructed by the superintendent in the performance of his work, and was guided by the manual issued by the company which he was supposed to study and follow in the performance of his duties. He was not employed to do any certain piece of work for the company, but was employed generally to represent it in making regular weekly collections on the debit assigned to him, under rules and regulations prescribed by the company, and generally as an agent for the sale of either industrial or ordinary life-insurance contracts; and he was required to report on Wednesday morning of each week at the office of the company where his accounts were made up and he turned in all moneys collected.

"Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is in-

ferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor." *Mitchem* v. *Shearman Concrete Pipe Co.*, 45 *Ga. App.* 809 (165 S. E. 889), and citations; *Continental Casualty Co.* v. *Payne*, 56 *Ga. App.* 873 (194 S. E. 428); *Nichols* v. *G. L. Hight Motor Co.*, 63 *Ga. App.* 155 (10 S. E. 2d, 439). The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written has the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner and method in the performance of the work. *Banks* v. *Ellijay Lumber Co.*, 59 *Ga. App.* 270, 272 (200 S. E. 480), and citations. Where the evidence authorized a finding that the decedent was traveling a regular territory, fixed by the employer, observing a regular schedule of covering such territory, as required by the employer, and taking orders subject to the approval of the employer, although he traveled in his own automobile, and at his own expense, and received no fixed compensation, but only commissions on his sales, the State Board of Workmen's Compensation was authorized to find as a matter of fact that he was an employee rather than an independent contractor, since the evidence showed that the employer exercised control over the time, manner, and method of doing the work. *Employers' Liability Assurance Corp.* v. *Montgomery*, 45 *Ga. App.* 634 (3) (165 S. E. 903). The fact that the employer may at any time terminate the contract is one to be considered in determining whether or not the employee is an independent contractor or merely a servant, although such fact is not sufficient within and of itself to establish the relationship of servant rather than independent contractor. *Zurich Gen. Accident &c. Co.* v. *Lee*, 36 *Ga. App.* 248 (136 S. E. 173); *New Amsterdam Cas. Co.* v. *Sumrell*, 30 *Ga. App.* 682, 684 (118 S. E. 786). A failure on the part of the employer, where the contract establishes the relationship of master and servant, to assert his right under the contract to control the manner, method, and means by which the employee performs the work, as by not interfering therein, does not change the relationship from that of master and servant as established by the

contract. *Joiner* v. *Sinclair Rfg. Co.,* 48 *Ga. App.* 365, 367 (172 S. E. 754).

Under the principles of law cited, we are of the opinion that the jury was authorized to find from the evidence in this case that Rainwater was the servant of Gulf Life Insurance Company, certainly as to the performance of his work in the handling of his debit, and that the company was liable in damages for his negligence as sued for by the plaintiff. The question was squarely for decision by the jury, under the rules of practice in this State, and we cannot say as a matter of law that the verdict was not authorized by the evidence.

Whether or not Rainwater was a servant of Gulf Life Insurance Company in the writing of ordinary life insurance anywhere in the State is not decided. We do not think it necessary to go that far. While the contract under which he worked makes no distinction in the rules and regulations of the company as applied to his various duties, the jury was authorized to find under the evidence that his time was largely taken up with his debit, and to find that, although he was not within the geographic area, he was on a mission connected with the work of his debit when he injured the plaintiff's husband. It has been held that an employee may be an independent contractor as to certain work and a mere servant as to other work for the same employer, in a Missouri case in which the facts were very much like those in this case. Vert *v.* Metropolitan Life Ins. Co., 342 Mo. 629 (117 S. W. 2d, 252, 116 A. L. R. 1381). If it should be conceded that Rainwater was an independent contractor as to the ordinary life-insurance contracts written by him, he was nevertheless a servant as to the handling of his debit, which was so largely under the control and supervision of the company. If the continuity of his servant relationship to the company was broken while Rainwater was on the trip to Roswell, by reason of a temporary departure from his duties in his debit, after the object of the departure had been accomplished and he had resumed the discharge of his duties relating to his debit the responsibility of the master for his acts as a servant reattached. In other words, he had re-entered upon the duties of his employment as a servant in going to the office of the company to get the papers which were necessary for him to have in the performance of those duties. See *Parks* v. *Maryland Casualty Co.,* 69

*Ga. App.* 720, 723 (26 S. E. 2d, 562), and citations; *Macon Dairies* v. *Duhart,* 69 *Ga. App.* 91, 96 (24 S. E. 2d, 732).

We are not unmindful of the fact that the courts of other jurisdictions have held both ways on the question whether a life-insurance agent generally is a servant of the company for which he solicits insurance or is an independent contractor. Although the weight of outside authority may be in favor of the view that a general insurance agent ordinarily is an independent contractor, there are respectable decisions to the contrary. And some courts recognize a distinction between an ordinary life-insurance agent or solicitor and an agent confined to a particular area designated as a "debit," in which he collects weekly or monthly premiums on outstanding industrial policies, and services the policyholders in the particular territory under instructions and supervision from the company. While we do not think it necessary to resort to foreign decisions to decide this case, we cite from the courts of other jurisdictions the following cases: Reiling v. Missouri Ins. Co., 236 Mo. App. 164 (153 S. W. 2d, 79); Superior Life, Health & Accident Ins. Co. v. Unemployment Compensation Board, 148 Pa. Super. 307 (25 Atl. 2d, 88); Richards v. Metropolitan Life Ins. Co., 19 Cal. 2d, 236 (120 Pac. 2d. 650); Miller v. Metropolitan Life Ins. Co., 134 Ohio St. 289 (16 N. E. 2d, 447); Fidelity Union Life Ins. Co. v. McGinnis (Tex. Civ. App.) 62 S. W. 2d, 186.

Gulf Life Insurance Company relies on *Travelers Ins. Co.* v. *Faulkner,* 63 *Ga. App.* 438 (11 S. E. 2d, 367), and *Whitehall Chevrolet Co.* v. *Anderson,* 53 *Ga. App.* 406 (186 S. E. 135), the only Georgia cases cited in its original brief, along with a number of foreign decisions, to sustain its contention that Rainwater was an independent contractor. The *Faulkner* case was a claim for compensation under the Workmen's Compensation Act, based on the accidental death of the claimant's husband, who was an agent of Metropolitan Life Insurance Company. While that case discussed the test applied in determining whether an employee is a servant or an independent contractor, the decision turned on the question whether or not the deceased, at the time of his injury, was acting in the course of and within the scope of his employment. That decision does not hold that the deceased was an independent contractor, and it is not contrary to our ruling in this case. The *Anderson* case was a suit brought against an automo-

bile company for the alleged negligence of one of its salesmen with whom the plaintiff was riding at the time she was injured. This court held that the company was not liable because the salesman was an independent contractor. We think that case is distinguished on its facts from the instant case because the salesman's movements were in no way controlled by his employer, except as to the territory in which cars could be sold, and the company did not have the right under any contract with the salesman, and did not assume the right to control the time, manner, and method of his work in selling cars for the company. That decision merely applied the general rule as to when an employee is an independent contractor to the facts of that case, and it does not require a different ruling in the instant case.

In the reply brief of counsel for the plaintiff in error, they cite the rule stated in *Bentley* v. *Jones,* 48 *Ga. App.* 587, 592 (173 S. E. 737), to the effect that the right of an employer to exercise a certain control over the work, where the control reserved does not apply to the manner of doing the details of the work, but goes merely to general supervision to insure that the ends prescribed by the contract shall be substantially met, does not destroy the independence of the relation between the parties. That rule is well supported by a numer of cases, but we do not believe that it is applicable to the case at bar. We think that the evidence in this case shows considerably more supervision and control of the work of Rainwater by his employer than is contemplated and described in the rule relied on by the insurance company.

This case was considered and decided by the entire court, under the act approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., Gardner and Townsend, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. Under the facts of this case, I do not think that the defendant insurance agent was an agent of the company and in the course of his employment when the injuries occurred. The agent had gone outside of his debit area in off hours on a mission disconnected with his relationship of master and servant. He was not going outside of his geographical debit area by necessity to perform a duty ordinarily performed within it. He had not returned to his debit area, and his intention to go to the office and get papers with the intention of performing debit

duties in the area would not put him on business for the company on debit business in the area. He went out of the debit area on a separate mission, and I think that his intention to go by the office to get the papers was a mere preparation to engage in debit business. Such preparation off the employer's premises, at least, is a private and not a company matter. If he had been a sales employee, and had driven his own automobile in off hours to the company's garage to get a company car to demonstrate to a customer, I do not think that he would have been in the course of his employment on his way in his own car to get another, and I think that the company would have not been liable for his negligence on the way to the garage. In Vert v. Metropolitan Life Ins. Co., 342 Mo. 629 (supra), it was held: "An employee may be an independent contractor as to certain work and yet be a mere servant as to other work for the same employer. . . Going outside of his debit district to sell old-line life insurance was purely permissive, and depended upon his own initiative, although, of course, it was to the company's interest to make it to Crowe's interest financially to do so. . . The decisive point is that Crowe was not on or returning from a trip which the company had directed him to make, nor which was made for the purpose of performing any duty the company required him to do. The trip was made to carry on another kind of activity, which was clearly separate and apart from his regular industrial insurance duties. . . A person who is ordinarily known as a life-insurance agent is certainly not within the classification of a servant or employee subject to direction as to how he shall attempt to accomplish results. His employment is solely for the purpose of bringing about contractual relations between his company and others. He works on his own initiative. His principal is properly held not to be liable for physical harm he causes because it has nothing to do with directing his physical movements. . . When Crowe left his debit district to engage in obtaining old-line life-insurance business outside of it, he left his regular employment, which occupied most of his time, and in which he had duties that did require him to make physical movements over a definite territory to find and collect from certain persons at the regular intervals as directed by the company or which it had no doubt the right to direct. In selling life insurance elsewhere, he was not running

on such physical errands for his employer but became, while he was outside of his debit, solely what is ordinarily known as a life-insurance agent working on his own initiative solely for the purpose of bringing about contractual relations between his company and others. He then had an entirely different relationship with his principal than he did when performing his regular duties in his debit which included physical errands, which required his physical services to accomplish, and which we may assume the company had the right to direct. In the former relation his physical movements were only incidental and it made no difference to the company when or how they were made; while in the latter they were the direct method of accomplishing the result sought and the company had the right to direct them. Knowledge on the part of the company that Crowe used his car as a means of transportation when soliciting life-insurance business outside his regular debit district was not sufficient to impose liability upon it for damage done by its use because it was left to his own initiative and decision whether he ever went out of it to sell life insurance and if so when, where, and how. Selling life insurance was not accomplished by physical movements at a time and place and in a manner which it was intended that the company should have the right to direct, and it should not be liable for physical damage done by Crowe, while he was engaged in such business on his own initiative. . . We hold that Crowe's activity as a life-insurance agent was so entirely separate from his work in his industrial-insurance debit that it was no part of it; that when he went out of his debit for that purpose he wholly departed from his regular employment in which the company had the right to direct his physical activity for its accomplishment; that the company neither reserved the right to direct the manner in which Crowe should travel, outside of his debit for the purpose of selling old-line life insurance, nor expressly or impliedly directed his travel in such business; and that it is not liable for physical damage he did when making trips solely for such purpose wherever he desired to go in Illinois or Missouri, or in returning from such expeditions."